WILLIAM PIGOTT v. THOMAS J. LILLY AND SILAS ENGLE.

*Forcible trespass—Defendant's character—Negligent noise.*

1. In an action for a forcible trespass plaintiff was allowed to show that defendant had been convicted of crimes of violence but afterwards released on review of the convictions. *Held,* that this evidence ought to have been struck out on defendant's motion; though the refusal to strike it out would not, perhaps, warrant a reversal.

2. An instruction is erroneous which leaves the jury to determine whether a joint defendant had " approved or defended " a trespass, if there was no testimony to that effect, and defendants denied its commission.

3. Hallooing on the public highway to the driver of a team for the purpose of warning him that another driver wishes to pass him, cannot be treated as an act of negligence that will make one jointly liable with the driver if the latter's team takes fright and does the passing team an injury,—especially if the warning was meant to prevent a collision.

4. The employer of a competent servant has a right to assume that the latter will behave properly in his service and under his direction.

Error to Cass.　(A. J. Smith, J.)　Oct. 8.—Oct. 22.

TRESPASS.　Defendant brings error.　Reversed.

*Frank Reshore, Harsen D. Smith* and *Geo. S. Clapp* for appellants.

*Howell & Clark* and *Spafford Tryon* for appellees.

COOLEY, C. J.　Plaintiff brought suit in trespass, and recovered against the defendants jointly a judgment of six hundred dollars.

The principal facts in the case are the following : On the afternoon of November 22, 1882, plaintiff, who was driving a single carriage from Dowagiac in the direction of Lagrange, overtook the defendants, each of whom was driving a two-horse farm wagon in the same direction.　These two teams belonged to Lilly ; and Engle, who had been but was not then

in his employ, was driving the forward team for him. Lilly's teams were on the main track of the highway, and were going at a moderate gait, one being two or three rods in advance of the other. Where plaintiff overtook them there was another track west of the main track, and plaintiff took this to pass them. He was driving much faster than they were ; but as he overtook Engle the team the latter was driving started into a gait as rapid or more so than that of plaintiff's horse, and the wagon soon collided with plaintiff's carriage, throwing him out and causing considerable injury. The plaintiff claimed, and gave evidence tending to show, that as he came up with Lilly the latter shouted to Engle, "Run him," or something of that sort, and made a motion with his hand indicating that he was not to allow the plaintiff to go by; that Engle then started the team into a rapid gait ; and that he purposely caused the collision by turning a little out of the main track towards the plaintiff as the latter came up. Lilly on the other hand claimed, and gave evidence tending to show, that what he called to Engle was "Look out!" or something of the sort, and was intended to put him on his guard against any running ; and Engle testified that he saw no motion by Lilly indicating a wish that he should run plaintiff, and that what he heard called out to him was, "Sile, look out," or "take care," or something of that sort.

When Lilly was on the stand as a witness on his own behalf, he was asked on cross-examination, whether he had ever been arrested charged with crime? He answered that he had been, twice. Plaintiff's counsel was allowed to follow up this question and show that he was once charged with murder, convicted, the case removed to the Supreme Court, and the verdict set aside, then tried again and acquitted. [38 Mich. 270.] He was again tried on a charge of assault with intent to kill, and convicted, and the verdict set aside in the Supreme Court. [43 Mich. 521.] Here the inquiry into these matters was stopped. The defendant's counsel moved to strike out the evidence, but the court denied the motion.

In general a trial court must be allowed liberal discretion in determining how far the antecedents of witnesses may be

inquired into on cross-examination; but the discretion ought not to be unlimited, and when that which is drawn out is of a nature which ought not injuriously to affect the credit, the court ought to strike it out without hesitation. What appeared in this case was that the witness had twice been accused of crimes of violence; but the result of the cases was a legal determination that the accusations were wrongful. Had the facts been proved merely for their bearing upon his credibility, there would be no ground for a suggestion that they probably tended to lead the jury to believe that he was an untruthful man. But the witness was a party to this suit, and the charge against him was of participation in a violent trespass. This cross-examination is justified on the ground of showing the jury what sort of a man this defendant is; and this can mean nothing less than this: that the jury may draw the conclusion that he is a man addicted to violence, and from his antecedents likely to have encouraged the violent trespass of Engle in this case. In that way the defendant might be convicted of trespass upon proof that he had been repeatedly accused of being a man of violence. It is easy to see that, in a case of this sort, where the plaintiff relied for recovery upon proof that defendant encouraged the trespass, and defendant denied it, such evidence, if allowed to stand and be commented upon to the jury, might be the evidence upon which the case would turn. Without therefore saying that the judgment ought to be reversed because this evidence was not stricken out, we still think the motion to that effect should have been granted. The strong probability was that the defendant Lilly would be wrongfully and injuriously affected by it, and the court would have difficulty in preventing this, if the evidence was allowed to stand.

But we think there were some errors committed in the charge of the court.

Among other things the jury were instructed that, "in determining whether Lilly directed, advised or encouraged the trespass, the jury should consider all the circumstances shown by the testimony; whether he approved of and defended the act of Engle after the collision; the relation of the two

defendants before and since the collision; all the conduct and conversation of the parties; and all the testimony in the case. That is, you take the whole testimony. Jurors should not form verdicts from one particular act or fact, but take the whole testimony together." Now, we look in vain in the record for any evidence that Lilly "approved of or defended" any trespass by Engle upon the plaintiff. Both he and Engle denied that any such trespass occurred; and whether they were correct in this or not, there was no room for any assumption that Lilly approved a trespass because he denied its commission. He certainly could not, by denying it, ratify and make it his own.

Again, there was evidence that Engle had before run the horses in the highway, and also that when at Dowagiac he had drank some gin, though it does not appear to have been claimed that he was intoxicated. Commenting upon the evidence the judge said: "Now if he [Lilly] didn't have confidence in Engle to manage the horses himself, and had to give him directions, and in giving him directions he frightened the horses, and in consequence of that the horses ran, and by that means run into Pigott, then, gentlemen, his act there assisted in procuring the trespass. You recollect what Engle says about his hallooing to him, and his turning around, and the horses, starting as he turned round; it is for you to say whether that started the horses; if the horses started in consequence of the hallooing of Lilly to Engle, then his act contributed to the running of the horses; and if it did, then if Engle is liable Lilly is liable also."

The case which the plaintiff had attempted to make out against Engle, and which he now claims that he did make out, was that he intentionally drove against the carriage of the plaintiff and caused the injury complained of. The effect of this instruction is—to state it shortly—that if Lilly made an effort to prevent this trespass, but in so doing unintentionally contributed to the starting of the horses, he is jointly liable for the trespass with the party intentionally committing it. This is equivalent to making an effort to prevent a trespass

an adoption of the act of committing it; and would be equally erroneous with the instruction already noticed.

If, on the other hand, the plaintiff were to plant his claim to recovery upon the ground of negligence in both Engle and Lilly, the charge would still be erroneous. It has not been claimed in the case that Engle was a man incompetent to manage and drive horses; nor is there ground for claiming that he was at the time intoxicated. What is claimed is that he had previously shown an inclination to race with horses on the highway, and that Lilly knew the fact and should not have trusted him with one of his teams, especially as he had taken a dram of gin, which might have increased the disposition to race. But having trusted him with a team, if he deemed it necessary afterwards to interfere to prevent mischief, and in doing so the horses were started and did mischief, Lilly is chargeable upon the facts as for personal negligence.

Presenting the case in this aspect, it becomes necessary to see what the act is on the part of Lilly, which can be treated as an act of negligence. Certainly the mere act of trusting the team to a competent man could not be deemed negligent, even though he was a man who sometimes took a dram or sometimes ran horses on the street. He had a right to suppose that the man would conduct himself properly in his service, especially when he was driving in his own company. There must be something besides this to constitute legal fault on the part of Lilly. But now, as they are driving along the highway, the plaintiff comes up, driving rapidly, and proposes to pass both Lilly and Engle, and Lilly, as he claims, fearing that Engle may yield to the temptation to run, calls out to him a warning against it. Now, it is said, the call may have startled the horses, and therefore Lilly should be held liable. This makes the call of warning, given for the very purpose of preventing the mischief which actually resulted, an act of negligence, and proposes to charge Lilly as a wrong-doer for trying to prevent a trespass. No legal principle has been called to our attention which would sustain such a proposition. If to call out in a loud voice

would naturally and commonly have the effect to frighten horses, there might be ground for some such claim as is now made; but it is not claimed that this is a natural and ordinary consequence; and it would lead to strange results if it were to be held that every man who halloos loudly in the vicinity of horses is negligent in doing so. It is not claimed in this case that there was, in the tone or manner of the call, anything unusual, or which would be specially calculated to cause fright to horses; and therefore there was nothing to distinguish this case, in respect to its legal aspects, from any other case of a loud call without improper motive. In this case it is claimed by Lilly that the call was for the purpose of preventing mischief; and if so, and he had no reason to suppose that horses would be startled thereby, it was a very proper act, and cannot become a negligent act by the mere fact that something unexpected resulted from it. The charge therefore was erroneous, in any view that can be taken of the case.

The judgment must be reversed and a new trial ordered.

The other Justices concurred.