PEOPLE *v*. FRED SMITH

1. ASSAULT AND BATTERY—ASSAULT WITH INTENT TO DO GREAT BODILY HARM LESS THAN THE CRIME OF MURDER—INTENT—PLEA OF GUILTY.

> The court did not err in refusing to vacate the defendant's plea of guilty of assault with intent to do great bodily harm less than the crime of murder, although defendant claimed that the trial court did not elicit from him sufficient facts with reference to intent, where the defendant waived the reading of the information, was represented and advised by counsel who explained the charge, and where the trial court explained to the defendant in detail the elements of the crime charged at the arraignment and elicited from the defendant that he had threatened to throw a child into the river, that he had the present means and ability to carry out his threat, and that he did not abandon his intent until the police brought his wife and baby to him as the defendant had demanded (MCLA § 750-.84).

REFERENCE FOR POINTS IN HEADNOTES

[1, 2]  6 Am Jur 2d, Assault and Battery § 6.

2. Assault and Battery—Assault with Intent to Commit Great
   Bodily Harm Less than the Crime of Murder—Intent—Aban-
   donment.

> The defendant did not voluntarily abandon his intent to com-
> mit great bodily harm less than the crime of murder where
> the defendant was standing upon a bridge with his young
> stepson on the railing and threatening to throw the child
> into the river unless the police met his demands to bring
> his wife and baby to the bridge and he was close enough
> to his victim actually to carry out an assault although the de-
> fendant started to leave the bridge when his demands were met
> (MCLA § 750.84).

Appeal from Berrien, Julian E. Hughes, J. Sub-
mitted Division 3 June 5, 1970, at Grand Rapids.
(Docket No. 8,428.) Decided October 1, 1970.

Fred Smith was convicted, on his plea of guilty,
of assault with intent to do great bodily harm less
than the crime of murder. Defendant appeals.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Ronald J. Taylor,*
Prosecuting Attorney, and *Hugh W. Black,* Assist-
ant Prosecuting Attorney, for the people.

*S. Jack Keller,* for defendant.

Before: T. M. Burns, P. J., and Fitzgerald and
Byrns,* JJ.

T. M. Burns, P. J. Defendant, Fred Smith, was
convicted, upon his plea of guilty, of assault with
intent to do great bodily harm less than the crime
of murder, MCLA § 750.84 (Stat Ann 1962 Rev
§ 28.279), and sentenced to imprisonment for one
and one-half to ten years.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

From the record below it is difficult to understand the events that transpired before the assault with which defendant is charged. Apparently, however, the defendant and his wife had had an argument. She called the police who apparently found it necessary to protect defendant's wife from him. In response to the police protection of his wife, defendant took his three year old stepson to a bridge and informed the police that if they didn't bring his wife and baby to him, he would drop his stepson, Lawrence Dunn, off a bridge into the river.

While defendant had the child out on the bridge over the St. Joseph River, he held the child on his arm, with his arm resting upon the rail of the bridge, and reiterated his intention to drop the child into the river if his wife and baby were not brought to him.

The police brought defendant's wife and baby to him. When he then attempted to leave the bridge, the police seized him, and rescued the child.

At the arraignment the trial judge questioned defendant concerning what transpired on the bridge as follows:

"*The Court:* Do I understand then that you had this child on the bridge?

\*  \*  \*

"*Defendant:* Yes.

"*The Court:* Now, how old is this Lawrence Dunn?

"*Defendant:* Three.

"*The Court:* Three years old. Now, how did you hold this child anyway, did you hold him over the water or the rail, or what?

"*Defendant:* I was leaning up against the rail and I had him sitting on my arm.

"*The Court:* Leaning up against the rail by the river?

"*Defendant:* Yes, I had him sitting on my arm.

\* \* \*

"*The Court:* About four feet high. And was the child above this rail?

"*Defendant:* He was sitting on the rail. I had my arm laying upon the rail and he was sitting on my arm.

"*The Court:* In other words, you had the child actually up on this rail?

"*Defendant:* And laying on my arm.

\* \* \*

"*The Court:* Now, how long did you have the child sitting up there?

"*Defendant:* About ten minutes.

"*The Court:* And did I understand that—I don't know whether this is what Mr. Keller [defendant's counsel] had mentioned or whether you mentioned, that you told the police that you'd throw the child in the river.

"*Defendant:* I told him I'd drop him in if they didn't bring her and the baby on."

The defendant appeared for sentencing and when asked by the court stated that he had nothing to say.

A motion was made, after sentencing, to vacate defendant's plea, which motion was denied. From that denial, defendant appeals.

*Did the court below commit reversible error in accepting defendant's guilty plea because the judge did not elicit from defendant sufficient facts with reference to "intent" to support a conviction for the crime of assault with intent to do great bodily harm less than the crime of murder?*

Defendant alleges that he qualified his plea of guilty insofar as having the necessary intent to

commit the crime charged and that, therefore, his plea should not have been accepted by the court.

Plaintiff states that defendant waived the reading of the information, was represented and advised by counsel who explained the instant charge, and that, therefore, he was informed of the crime charged and its elements. In addition, the court further explained in detail the elements of the crime charged to the defendant during the arraignment.

Furthermore, it is clear from defendant's own words that defendant threatened to throw the child into the river, had the present means and ability to carry out this threat, and did not abandon his intent until the police brought his wife and baby to him.

Moreover, *People* v. *Lilley* (1880), 43 Mich 521, cited by defendant for the proposition that by starting to leave the bridge after the police brought his wife and baby to him he had voluntarily abandoned his intent is not on point with the case at bar. In *People* v. *Lilley,* unlike the present situation, the defendant abandoned his intent before he was close enough to the victim to actually carry out an assault. Therefore, the *Lilley* case is completely distinguishable from the case now before us.

So also is the recent opinion of this Court in *People* v. *Primeau* (1970), 24 Mich App 235, wherein we found that there was nothing from which a necessary element of the crime charged, intent, could be inferred. Here, there is ample objective indication of the intent of the defendant appearing from the record. We consider that this case is essentially the same as *People* v. *Wade* (1970), 24 Mich App 518. Therefore, we affirm for the reasons given in *Wade, supra.*

Affirmed.

All concurred.