*In re* ILLOVA.

1. CRIMINAL LAW—FEDERAL AND STATE OFFENDERS—JURISDICTION.
   One accused of an offense against both Federal and State law may be subjected to trial in the courts of one of these sovereignties, when the other, which first had custody of his person, turns him over for such purpose, ·the accused having no right to complain of the jurisdiction thereby conferred.

2. SAME—FEDERAL AND STATE OFFENDERS—PROSECUTION.
   A defendant who has violated both State and Federal laws is liable to each sovereign, is subject to prosecution by each and he does not have the privilege of choosing which shall first inflict punishment.

3. SAME—SURRENDER OF PRISONER TO STATE OR FEDERAL GOVERNMENT —CONSENT.
   Either the Federal or the State government may voluntarily surrender its prisoner to the other without the consent of the prisoner.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 14 Am Jur, Criminal Law § 216.
[1, 3] 14 Am Jur, Criminal Law § 220.
[4] 15 Am Jur, Criminal Law §§ 470, 471.

4. Same—Jurisdiction—Concurrent Sentences by Federal and State Courts.
State court had jurisdiction to sentence defendant for violation of narcotics law where he was arrested by city police officer, turned over to Federal authorities who arraigned him and released him on bond, again arrested by city police and charged with violating the State narcotic laws, relinquished to Federal authorities for final plea, pleaded guilty and sentenced to 5 years, returned to State authorities, convicted and given a 5-to-10 year sentence to run concurrently with the Federal court's sentence (PA 1952, No 266, § 3).

Habeas corpus with ancillary writ of certiorari to the Recorder's Court for the City of Detroit by Johnny Illova to obtain release from the State Prison of Southern Michigan. Submitted October 21, 1957. (Docket No. 93, Calendar No. 47,528.) Writ dismissed March 4, 1958.

*Johnny Illova, in propria persona.*

*Thomas M. Kavanagh,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

SMITH, J. This is a petition for writ of habeas corpus. The petitioner is presently confined in the State prison of Southern Michigan. He asserts that he is unlawfully and illegally confined because of lack of jurisdiction in the State.

The return of the recorder's court to our writ of certiorari shows the following:

"1. On July 9, 1952, upon the sworn complaint of William Frank, Detroit police officer, and the written recommendation of the prosecuting attorney, a warrant was issued by Judge John P. Scallen accusing Johnny Illova, hereinafter called defendant, of the unlawful possession of narcotics in violation of PA 1952, No 266, § 3 (CLS 1956, § 335.153, Stat Ann

1957 Rev § 18.1123]), on July 8, 1952, in the following substance:

" 'Not then and there having a license as required under the provisions of PA 1937, No 343, as amended, being CL 1948 and CLS 1952, §§ 335.51–335.78, (Stat Ann 1953 Rev §§ 18.1071–18.1098), did then and there possess or have under his control a certain narcotic drug, to-wit: Forty (40) capsules containing 52.79 grains of heroin, said heroin hydrochloride, being a compound, manufacture, preparation and derivative of opium.'

"Defendant was arraigned on same date before Judge Scallen; a plea of not guilty was entered and bail was set at $3,000. Examination was scheduled for July 17, 1952, adjourned to July 23d, and to July 25th, when it commenced before Judge John P. Scallen. He was bound over for trial.

"On July 31, 1952, the defendant was arraigned on information which reiterated the charge in the complaint and warrant; a plea of not guilty was entered when defendant stood mute.

"2. Originally scheduled for August 19, 1952, trial was adjourned on 2 occasions and commenced on October 13, 1952, before the late Judge O. Z. Ide and a jury. The trial concluded on October 14, 1952, with the jury's verdict of guilty of possession of narcotic drugs as charged in the information.

"3. Defendant was represented by retained counsel from arraignment on the warrant through trial.

"4. On October 15, 1952, Judge O. Z. Ide sentenced defendant to imprisonment of not less than 5 nor more than 10 years. See appendix A for journal entry.

"5. On June 15, 1954, Judge O. Z. Ide modified the sentence *nunc pro tunc* as of October 15, 1952, to make it run concurrently with a sentence imposed upon the defendant on September 3, 1952, by Judge Arthur F. Lederle, in the United States district court. See appendix B for journal entry."

The jurisdictional question presented in petitioner's brief, not controverted by the State, reads, in part, as follows:

"The petitioner was first arrested by officer of the city of Detroit, and turned over to Federal authorities, who arraigned him and released him on bond, while on bond he was again arrested by the city of Detroit police, and charged with violating the State narcotic law. While in custody of the city of Detroit authorities, petitioner was relinquished to the Federal authorities for final plea, petitioner pleaded guilty, and was sentenced to a judgment of 5 years.

"Petitioner was then returned to State authorities who tried petitioner, found him guilty and sentenced him to a servitude of 5 to 10 and ran said sentence concurrently with sentence previously imposed by the Federal court."

The petitioner also asserts that he

"is now confined in the custody of the warden at Jackson, Michigan, under illegal custody, after completing a 5-year term for the Federal government at Leavenworth, Kansas, that was imposed by the Honorable Judge Arthur F. Lederle, of the district court for the Eastern district of Michigan, at Detroit, Michigan, on the 3d day of September, 1952."

It is the position of the petitioner that the State "relinquished all rights and claims of imprisoning the petitioner * * * since the State's 5–10-year sentence was ordered to start immediately * * * yet the State transferred its jurisdiction of the petitioner to the Federal government to serve a 5-year sentence." The claim, then, is a loss of jurisdiction by the State when petitioner was transferred to the Federal authorities to serve the sentence imposed by the Federal courts.

The issue presented is similar in principle to many arising under our system of dual sovereignty, State

and Federal. Thus in *Hostetler* v. *Hudspeth,* 163 Kan 647 (184 P2d 994), a like question of jurisdiction was presented. Petitioner, while serving a sentence in the State penitentiary, was paroled. He was thereafter again apprehended by the authorities and sentenced to 10 years' confinement in the United States penitentiary at Leavenworth for post office robbery. When released from Leavenworth, he was delivered by the Federal authorities to Kansas authorities and confined in the State penitentiary. He then brought an original proceeding in habeas corpus in the State court. "His sole complaint," states the opinion, "is that when the Kansas authorities had possession of his person in 1940 (he had been paroled in 1939) and surrendered possession of him to the Federal authorities they then lost jurisdiction to punish him further."

The court first addressed itself to the question of whether or not he had been apprehended on account of having violated his parole, or for other offense. It then continued in these words (p 649):

"In the second place, conceding for the sake of argument that the parole was revoked at the time petitioner was apprehended in Missouri, or even that he was taken into custody because his parole was revoked, the State might still deliver him to the Federal authorities for trial without forfeiting its right to take him into custody again when the Federal authorities were through with him. Any other rule would cause rivalry between States and between States and the Federal government, which would only result in hampering the general work of law enforcement.

"There have been cases where one sovereign has permitted a person to be taken from a penal institution by another sovereign so that the second sovereign might proceed to try him and when the second sovereign was through with him he was returned to the first.

"The rule is stated in 22 CJS, Criminal Law, § 145, pp 238, 239, as follows:

" 'As a general rule, Federal courts have no right to interfere with the custody of State courts over persons in their possession. A State court may permit a Federal court to exercise some jurisdiction over its prisoner without surrendering the prior jurisdiction which it has.'

" 'This right of priority, however, is a matter of concern to the courts involved, it being for them, not accused, to decide which shall try or inflict punishment on him first. Hence, such right of priority may be waived, accused having no right to complain thereof, but such waiver extends no further than intended. Thus, one accused of an offense against both Federal and State law may be subjected to trial in the courts of one of these sovereignties, when the other, which first had custody of his person, turns him over for such purpose, accused having no right to complain of the jurisdiction thereby conferred.' (p 238)"

The substance of the matter is this: When a defendant has violated both State and Federal laws he is liable to each sovereign and subject to prosecution by each. It is not his privilege to choose which shall first inflict punishment. If any comity between sovereigns is violated, the offended sovereign may complain, not the defendant. So far as he is concerned, "the essential part of a sentence of imprisonment is not the time when it begins to run, but the serving of the sentence as required by law." *In re Huber,* 334 Mich 100, 104. Cases holding that the sovereign having prior custody cannot without its consent be deprived of such custody (*e.g., Ableman* v. *Booth,* 21 How [61 US] 506 [16 L ed 169]), are not here in point. "Either the Federal or the State government may voluntarily surrender its prisoner to the other without the consent of the prisoner." *Vanderpool* v. *Hunter* (CCA), 177 F2d 716.

Petitioner is not entitled to be discharged and the relief prayed for is denied and the writ dismissed.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.