Submitted April 25, affirmed June 14, 1961

# KNOWLES *v.* GLADDEN

362 P. 2d 763

No appearance for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

McALLISTER, C. J.

The petitioner, Harry C. Knowles, a prisoner in the state penitentiary, filed a petition for a writ of habeas corpus in the circuit court for Marion county. The demurrer of the defendant to the replication was sustained and the writ dismissed. Petitioner appeals.

The record shows that on December 20, 1954 petitioner was in custody of the United States District Court for the Northern District of California, North-

ern Division, at Sacramento, on a charge of violating the Dyer Act, to which he had entered a plea of guilty. On December 20, 1954, before Knowles was sentenced on the federal charge, he was turned over to Oregon authorities for trial in Wasco county, Oregon, on a charge of murder. On December 29, 1954 Knowles, on his plea of guilty, was convicted in the circuit court for Wasco county of murder in the second degree and sentenced to life imprisonment in the penitentiary. The judgment provided that the imprisonment should commence upon the expiration of the sentence to be imposed on Knowles by the United States District Court at Sacramento, and remanded Knowles to the sheriff for delivery to the federal court at Sacramento for sentencing. The judgment further ordered the sheriff to secure custody of Knowles from the federal authorities when he had served his federal sentence and to then deliver Knowles to the penitentiary at Salem to serve his life sentence for murder.

Knowles was returned to Sacramento and on December 30, 1954 sentenced to imprisonment for a term of five years, and thereafter was incarcerated in the federal prison at McNeil Island in Washington to serve said term. On August 13, 1958 Knowles was paroled from the federal prison but was turned over in Washington to Oregon authorities who returned him against his will to the penitentiary at Salem, where he has since been confined.

Knowles contends that Oregon lost jurisdiction of him when he was returned by the sheriff of Wasco county to the federal authorities at Sacramento; that Oregon, without the consent of the United States, had no right to retake custody of the petitioner while he was on parole from the federal prison; and that Ore-

gon had no right to return petitioner against his will from Washington to the penitentiary in Oregon.

■ Petitioner does not challenge the jurisdiction of the circuit court of Wasco county to convict him of murder, and does not allege any denial of due process. The right of Oregon, upon proper application to the federal authorities, to take Knowles from the district court at Sacramento, for the purpose of trying him on the murder charge is clearly established. See *Ponzi v. Fessenden*, 258 US 254, 42 S Ct 309, 66 L Ed 607, 22 ALR 879; *People v. Nokes*, 25 Cal App 2d 259, 77 P2 243; *United States v. Warden of Clinton Prison*, 21 F Supp 502 (ND NY 1937); *United States v. Kipp*, 232 F2d 147 (7th Cir, 1956).

■ It is well settled that Oregon by returning Knowles to the Federal authorities in California, from whom he had been obtained, did not lose its right to require Knowles to serve his life sentence in Oregon after he had served the sentence imposed on him in California for the violation of federal law. See *Ponzi v. Fessenden*, supra; *State ex rel Smith v. Dowd, Warden, etc*, 234 Ind. 152, 124 NE2d 208 (1955); *Zerbst v. McPike*, 97 F2d 253 (5th Cir, 1938); *In re Illova*, 351 Mich 204, 88 NW2d 589; *In re Hostetler v. Hudspeth*, 163 Kan 647, 184 P2d 994; *United States v. Kipp*, supra.

In the leading case of *Ponzi v. Fessenden*, the court said:

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain

if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. In re Andrews, 236 Fed 300; United States v. Marrin, 227 Fed. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it."

In *State ex rel Smith v. Dowd, Warden, etc,* supra, the prisoner, a federal parolee, was convicted and sentenced in the state court for armed robbery, was then delivered to federal authorities to complete his term in federal prison on account of his parole violation, and upon his release was returned to custody of the state to serve his sentence. The court held that Wisconsin had not waived its right to exact the punishment imposed by its court by surrendering the prisoner to federal authorities to serve the remainder of his federal term, and that the prisoner had been deprived of no constitutional right by this exercise of comity.

In *Zerbst v. McPike,* supra, a person charged with violating a state law was delivered by state officers to federal authorities, by whom he was convicted and sentenced to prison for three years. The prisoner was then returned to the state authorities, was convicted in the state court and was sentenced to prison for three to five years. After the prisoner had served his state sentence he was required to serve his federal sentence, the court holding that the federal sentence could begin to run only from the date the prisoner was received at the federal penitentiary.

■ ORS 137.370 provides that the term of a person sentenced to imprisonment in the penitentiary commences from the date of his delivery at the penitentiary.

A delay in the execution of the judgment of commitment does not give the criminal the right to a discharge because of such delay. *State ex rel Smith v. Dowd, Warden, etc,* supra; *Zerbst v. McPike,* supra; *In re Illova,* supra; *Lunsford v. Hudspeth,* 126 F2d 653 (10th Cir, 1942).

██ Petitioner's contention that the Oregon authorities had no right to take custody of him while he was on parole from the federal prison is entirely without merit. If the sovereignty entitled to prior custody of a prisoner consents or does not object, another sovereignty may take such person into custody to subject him to its laws. If any comity between sovereigns is violated the offended sovereignty may complain, but not the prisoner. *Hebert v. Louisiana,* 272 US 312, 47 S Ct 103, 71 L Ed 270, 48 ALR 1102 (1926); *Drummond v. State,* 160 Tenn 97, 21 SW2d 1039 (1929); *United States v. Chairman of Board of Parole,* 81 F Supp 592 (DC Pa 1948), affirmed 175 F2d 780 (3rd Cir,1949); *United States v. Marrin,* 227 F 314 (DC Pa 1915); *Davis v. Rhyne,* 181 Kan 443, 312 P2d 626 (1957); *Rawls v. United States,* 166 F2d 532 (10th Cir,1948); *United States ex rel Lombardo v. McDonnell,* 153 F2d 919 (7th Cir,1946); *In re Silverstein,* 52 Cal App2d 725, 126 P2d 962 (1942).

██ Petitioner's contention that the Oregon authorities had no right to return him to this state was not raised in the court below, but suggested for the first time on appeal. In any event the contention has no merit. The extradition proceedings can be attacked by habeas corpus only in the asylum state, and after the demanding state has custody of the prisoner within its borders habeas corpus is no longer available to inquire into the method by which such custody was obtained.

*Anderson ex rel Poe v. Gladden,* 205 Or 538, 547, 288 P2d 823 (1955); *Macomber v. Alexander,* 197 Or 685, 703, 704, 255 P2d 164 (1953); *State v. Owen,* 119 Or 15, 24-28, 244 P 516 (1926); 4 Anderson, Wharton's Criminal Law and Procedure, § 1484 (1957).

The judgment is affirmed.