**Harry C. KNOWLES, Appellant,**

v.

**Clarence T. GLADDEN, Warden, Oregon State Penitentiary, Appellee.**

**No. 21216.**

United States Court of Appeals
Ninth Circuit.

May 3, 1967.

Rehearing Denied June 14, 1967.

See also D.C., 254 F.Supp. 643.

George L. Kirklin, Portland, Or., for appellant.

Robert Y. Thornton, Atty. Gen., Peter S. Herman, Asst. Atty. Gen., Salem, Or., for appellee.

Before JERTBERG and MERRILL, Circuit Judges, and MATHES, District Judge.

JERTBERG, Circuit Judge:

Appellant, a prisoner at the Oregon State Penitentiary, appeals from the denial of his petition for a writ of habeas corpus. Appellant was convicted and sentenced on his plea of guilty to second degree murder. After an evidentiary hearing, the district court found that the plea was voluntary and accordingly denied appellant's petition. We affirm.

The district court made lengthy findings of fact, which may be summarized as follows:

During October of 1954, appellant was incarcerated in the County Jail at Apalachicola, Florida. At the time he was forty-six years old, unable to read or write well, and had only a fourth or fifth grade education. On October 11, 1954,

he was interviewed there by F.B.I. special agent Charles Carroll and questioned about the interstate transportation of a stolen pickup truck which had been owned by one Albert Stuart. Carroll advised appellant that he did not have to make any statements, that any statements he did make could be used against him, and that he had the right to consult an attorney. The interview lasted about one hour, and appellant denied any knowledge of the pickup truck or of Stuart's whereabouts.

On October 18, 1954, appellant was arrested by federal agents and taken before a United States Commissioner for preliminary hearing on the interstate motor vehicle theft charge. Appellant testified that he was first told of his right to counsel at this hearing, but that the Commissioner said that whether appellant had counsel at that time did not make any difference.

On October 20, 1954, appellant was again questioned by agent Carroll. Carroll drew up a statement, which appellant signed, relating solely to the motor vehicle theft charge, stating that appellant had been advised that he had a right to counsel and that the statement could be used against him. On October 29, 1954, Carroll again questioned appellant after advising him of his rights as before.

During October and the first half of November, 1954, while in federal custody, appellant became the prime suspect in the probable homicide of Stuart.

Appellant was indicted on the motor vehicle theft charge by a federal grand jury in Sacramento, California, on November 12, 1954. Appellant was transported to Sacramento on November 17, 1954, and arraigned in the federal district court there on the following day. At that time he was advised of his right to counsel, but he declined counsel, and his plea of guilty was accepted.

Later that same day, appellant was questioned by Investigators Casey and Coffey of the California Bureau of Criminal Identification and Investigation (CII) about the probable death of Stuart.

But appellant made no incriminating statements. The purpose of the interrogation was to secure appellant's cooperation in submitting to a polygraph (lie detector) test. Investigator Coffey was an experienced polygraph operator and specialist. He sought to develop a rapport with appellant by assuming the role of the neutral seeker of truth. He told appellant "I am a completely neutral participant in this thing; my only function is to establish as nearly as possible the true facts of the situation * * *." He further stated that he was officially obligated to pass along to the people handling the investigation anything that appellant might provide him. Appellant was not advised of his right to counsel during this interrogation.

On November 19, 1954, appellant was again questioned extensively about Stuart's death. He was given the same advice, if any, concerning his rights as was given on the previous day. During the interrogation, Coffey administered a polygraph test. Appellant was asked a series of irrelevant questions interspersed with occasional references to the homicide. This procedure was used to establish a normal response and to put him at ease so that his reactions to important questions would be readily apparent. Appellant made no incriminating statements, but Coffey told him at the completion of the test that some of the answers were false.

On November 20, 1954, appellant was again interrogated for several hours but was given no advice as to his right to silence or counsel. He finally admitted killing Stuart. Coffey then told appellant that it would be much easier for appellant if he cooperated.

On November 22, 1954, appellant was to be sentenced on his conviction for interstate vehicle theft, but the sentencing was postponed until December 14, 1954, to allow further interrogation of appellant by CII investigators. That same day, without being advised of his rights, appellant was questioned by Coffey and Casey.

On November 24, 1954, Casey arranged with the federal probation officer for further extensions of appellant's sentencing in the event more time was needed by CII for investigation of the homicide.

On November 30, 1954, appellant was questioned at length without being given cautionary instructions. The Prosecuting Attorney of Yakima County, Washington, one Clark, was present at this examination because appellant believed that Yakima was where Stuart's death had occurred.

On December 1, 1954, appellant agreed to give Clark a written confession. Clark made no threats or promises to appellant but did warn him that he did not have to talk and that any statement he made could be used against him. Clark prepared the statement, making intentional errors and having appellant initial the corrections in order to show that appellant had read the statement. However, since he could not read, appellant merely followed Clark's instructions in marking the statement. Appellant was questioned further by Coffey after completing the statement.

On December 2, 1954, pursuant to a request from CII and Yakima County officials, an officer of the Oregon State Police filed for and received from the Oregon Circuit Court for Hood River County a writ of *habeas corpus ad prosequendum*, ostensibly to release appellant from federal custody to prosecute a larceny charge against him. Appellant was released under this writ on December 10, 1954, and transported to Oregon by Casey and officers of Hood River County. Appellant was questioned about details of the homicide, especially the location of Stuart's body, but was given no advice as to his rights.

On December 12, 1954, Stuart's body was exhumed near Shaniko, Oregon. During the interrogation at that time, appellant admitted killing Stuart at Shaniko. Appellant was not advised of his right to counsel or to remain silent. Appellant was then taken to The Dalles,

Oregon, and introduced to one Heisler, the District Attorney of Wasco County, Oregon, as a "very cooperative" fellow. That night, appellant was questioned by members of the Oregon State Police, the CII, and the Wasco County Sheriff's and District Attorney's offices. Heisler prepared a typewritten statement, which appellant signed after initialing the corrections of several typographical errors. The statement contained a recitation that it was given voluntarily, without fear, threats, or promise of reward, and that appellant had been informed the statement could be used against him.

Appellant was never arraigned or taken before any court on the larceny charge for which the writ of *habeas corpus ad prosequendum* had been issued.

Appellant was returned to Sacramento on December 13, 1954, and appeared before the federal district court for sentencing the following day. However, the sentencing was further postponed at the request of the probation officer.

On December 15, 1954, the Wasco County Sheriff filed an information in the Justice Court of The Dalles charging appellant with second degree murder. That court issued a warrant for appellant's arrest. On December 17, 1954, a petition for writ of *habeas corpus ad prosequendum* was filed, granted, and the writ issued in the Circuit Court of Wasco County. Appellant was released pursuant to the writ on December 20, 1954, and turned over to Oregon authorities on condition that he be returned to federal custody on or before December 30, 1954.

Appellant was taken to The Dalles, arriving there December 21, 1954. During the trip, he was questioned about his travels with Stuart but was not advised of his rights. On December 22, 1954, Heisler arranged to have the case heard that morning by the Wasco County Circuit Court. He then had a conversation with appellant in the County Jail. But the district court specifically found that, during this conversation, contrary to appellant's testimony, Heisler "did *not* represent that if [appellant] would waive

indictment and plead guilty to an information charging second degree murder, he (Heisler) would recommend an early parole" (emphasis added). After this conversation, appellant was taken directly to the Circuit Court even though he had not been arraigned in Justice Court on the information filed therein, nor afforded a preliminary hearing, nor indicted by the grand jury. The district court found that "this procedure presupposed that [appellant] would waive preliminary hearing and indictment."

Before the Circuit Court, appellant attempted to waive counsel and plead guilty, but the court refused to allow this and appointed a local attorney in The Dalles, one Van Vactor, as appellant's counsel.

After his appointment, Van Vactor consulted with appellant. Appellant mentioned the confessions but did not explain the circumstances surrounding them. Appellant did not mention the conversations that morning with Heisler. Van Vactor discussed the case with Heisler. However, at the evidentiary hearing, Van Vactor testified he could not recall being shown appellant's written confessions.

Van Vactor concluded that a grand jury would indict appellant for first degree murder and that the confessions would be a "major factor" in a trial. Van Vactor advised appellant of his evaluation of the case. On December 24, 1954, "as a result of this advice," appellant waived indictment and pleaded guilty to the information charging him with second degree murder. Appellant was sentenced on December 29, 1954, to life imprisonment.

In addition to the district court's findings of fact, summarized above, the record also discloses the following proceedings subsequent to appellant's sentence of life imprisonment:

Appellant claims he did not appeal his Oregon conviction because the errors now raised do not appear in the record of those proceedings, which were regular on their face, and because immediately after his sentencing, appellant was returned to Sacramento and sentenced to five years on his previous plea of guilty to the charge of interstate motor vehicle theft. He thereafter was imprisoned in the federal penitentiary at McNeil Island, Washington, and had no knowledge of appeal procedures in Oregon.

In August, 1958, appellant was released on parole from the federal penitentiary and immediately taken into custody by Washington State authorities pending extradition proceedings brought by the State of Oregon. On August 13, 1958, appellant was turned over to Oregon officials and imprisoned in the Oregon State Penitentiary, where he has been ever since.

In 1958 and again in 1960, appellant filed petitions, not pertinent to this appeal, in the state courts of Washington and Oregon. Thereafter, he appealed to the Oregon Supreme Court alleging that his guilty plea had been induced by trickery. On June 14, 1961, that court affirmed a lower court judgment of dismissal. Knowles v. Gladden, 227 Or. 408, 362 P.2d 763 (1961). Certiorari was denied by the United States Supreme Court on February 19, 1962. 368 U.S. 999, 82 S.Ct. 627, 7 L.Ed.2d 537 (1962).

Appellant filed a petition in the United States District Court for the District of Oregon alleging that he was not advised of his constitutional rights prior to arraignment, that he was not represented by competent counsel, and that his guilty plea was involuntary. This petition was dismissed on June 26, 1962.

A petition for writ of habeas corpus was then filed in the Circuit Court of Oregon for Wasco County urging the same grounds. This petition was quashed on September 26, 1962, for lack of jurisdiction. Appellant then petitioned the Circuit Court of Oregon for Marion County for certain post conviction relief under Oregon statutes. On December 6, 1962, that court dismissed the petition on the ground that the issues raised had already been considered by the Oregon state courts and the United

States District Court for the District of Oregon.

Appellant appealed that dismissal to the Oregon Supreme Court. Appellant's appointed counsel in that court was granted his request to withdraw on the ground that the appeal was without merit. Appellant then requested a dismissal of his appeal, which was granted with prejudice on August 12, 1963. Appellant then filed a petition for writ of habeas corpus with the Oregon Supreme Court, which petition was denied on October 8, 1963, on the ground that the prior dismissal with prejudice was res judicata.

On March 10, 1964, the United States District Court for the District of Oregon denied without a hearing another habeas corpus petition filed by appellant. Pursuant to appellant's request, his present attorney was appointed by the lower court on March 30, 1964. Leave was then granted for the filing of an amended petition. Appellant filed an amended petition on October 29, 1964, based on the ground that his plea of guilty before the Wasco County Circuit Court on December 24, 1954, was made "under circumstances rendering it involuntary and in violation of [appellant's] rights under the Sixth and Fourteenth Amendments of the Constitution of the United States." The petition then sets out supporting facts, which it is not necessary to detail here.

The lower court held an evidentiary hearing on appellant's amended petition on January 14, 1966. The findings of fact summarized above were rendered on June 23, 1966.

In its opinion, the district court found that "petitioner voluntarily and with full understanding of the consequences pleaded guilty to the offense of second degree murder." The court further found that appellant's decision to plead guilty "was reached voluntarily after consideration of the advice of competent counsel * * *."

On this appeal, appellant argues at length that his confessions were coerced and involuntary. The district court found that they were not, but in the view we take of the case, we do not reach this question.

■ Appellant pleaded guilty to the charge against him. If a plea of guilty is made voluntarily and with an understanding of its nature and consequences, it conclusively establishes every necessary element of the offense charged. The subsequent conviction is based entirely on the plea, independent of and without reference to any evidence, including prior confessions, either coerced or voluntary.

"A plea of guilty, if understandingly and voluntarily entered, is conclusive. Nothing more is required. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009. The basis of the conviction is the guilty plea and not the evidence, including a confession, which might be offered if the case proceeded to trial. The question of the admissibility of the confession as evidence therefore becomes immaterial under such circumstances." United States v. French, 274 F.2d 297, 299 (7th Cir. 1960). See also Snipe v. United States, 343 F.2d 25, 28 (footnote 5) (9th Cir.), cert. denied, 382 U.S. 960, 86 S.Ct. 440, 15 L.Ed.2d 363 (1965).

■■ Thus the validity of the conviction is to be tested on collateral attack by the voluntariness of the plea rather than the voluntariness of the confessions, which were never introduced as evidence. The voluntariness of the confessions may become material to our inquiry only insofar as it may have affected the voluntariness of the plea. If the plea was induced by incriminating statements made involuntarily, the conviction cannot stand. Wright v. Dickson, 336 F.2d 878, 882 (9th Cir. 1964). See also Briley, Jr. v. Wilson, 376 F.2d 802 (9th Cir. 1967), decided April 12, 1967; Doran v. Wilson, 369 F.2d 505 (9th Cir. 1966).

■ As noted above the district court found specifically that appellant's guilty plea was made voluntarily and

with full understanding of the consequences. We cannot set aside this finding unless it is clearly erroneous. F.R. Civ.P. 52(a). On this record there is substantial evidence that appellant entered the plea voluntarily. He did so only after consultation with, and upon the advice of, competent counsel.[1]

The existence of appellant's prior confessions was undoubtedly considered by appellant's counsel as a crucial factor. But it is not for this court to re-weigh the pros and cons of proceeding to a trial on first degree murder with a possible death penalty. Counsel's weighing of the risks of such a trial would be grounds for reversal only if counsel's assistance to appellant was "of such a kind as to shock the conscience of the Court and make the proceedings a farce and a mockery of justice." United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). In view of the substantial evidence against appellant,[2] independent of the confessions, we cannot say that counsel's advice shocks the conscience or produced a mockery of justice. Likewise, this independent evidence, coupled with counsel's advice, provides substantial support for a finding that the decision to plead guilty was based on that evidence and advice, and was therefore voluntary. Thus, this case is governed by the well-settled rule that "a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the

defendant had pleaded not guilty and had gone to trial." Busby v. Holman, 356 F.2d 75, 77 (5th Cir. 1966).

Affirmed.

---

1. Appellant testified that he followed his attorney's advice on the plea because "I thought he was right, and I went along with him," that he relied on the advice of counsel in entering the plea, that as to the possible use of his confessions at a trial if he pleaded not guilty, he "never gave it a thought" but relied on assurances of an early parole, in addition to his counsel's advice. Appellant's attorney testified that "it was only after we had conferred, I had made as full an explanation as I could make, that he

[appellant] finally entered his plea. * * * I tried to advise him fully and he listened to me completely, and that after that was done he then made up his mind, with the information that he had, and entered his plea."

2. The district court noted that this included "his [appellant's] conduct in failing to notify authorities of the victim's death, his secret burial of the victim's body, his theft of the victim's property and his flight from the scene of the crime * * *"