**Vance RALEIGH, Petitioner,**

v.

**Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. C-68-6-E.**

United States District Court
N. D. West Virginia.
July 28, 1969.

Jack R. Nuzum, Elkins, W.Va., Court-appointed, for petitioner.

C. Donald Robertson, Atty. Gen. of West Va., Morton I. Taber, Asst. Atty. Gen., Charleston, W.Va., for respondent.

MAXWELL, Chief Judge.

■ Petitioner, Vance Raleigh, is presently incarcerated in the West Virginia State Penitentiary for an indeterminate term of not less than one nor more than fifteen years. The sentence was imposed by the Circuit Court of Fayette County, West Virginia, following Petitioner's entry of a guilty plea to the charge of burglary. The sentence was suspended and Petitioner was placed on probation for a period of three years by the state court on January 13, 1966. By order of May 9, 1967, the probation was revoked and the sentence under which Petitioner now serves was reimposed. By telephone communication to the Clerk's office, the Court is informed that Petitioner is presently on parole from the West Virginia Penitentiary. The contentions are nevertheless awarded consideration on the merits. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Rinehart v. Boles, 286 F.Supp. 562 (N.D.W.Va.1968).

Petitioner has filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C.A. §§ 2241 et seq., seeking relief from the conviction and sentence discussed above. Upon an examination of the petition and Respondent's answer to the show cause order, a plenary hearing was held in Petitioner's case. An attorney was appointed to represent Petitioner and several evidentiary hearings were held at which the issues raised by Petitioner were fully developed. Upon the conclusion of the hearings the case was submitted.

Upon analysis of the matters presented in Petitioner's petition, Petitioner's rebuttal to Respondent's answer, and the testimony heard at the plenary hearings, the issues raised and suggested for consideration are: (1) denial of Petitioner's right to a speedy trial; (2) involuntary plea of guilty, as it was coerced and induced by plea bargaining between the prosecuting attorney and Petitioner's hired counsel, which resulted in a "deal" being made whereby Petitioner was placed on probation; (3) ineffective assistance of counsel, in that counsel (a) made an improper "deal," (b) convinced Petitioner to plead guilty, and (c) was unwilling to represent Petitioner at trial; (4) physical mistreatment by officials with the objective of obtaining incriminating statements from Petitioner; and (5) denial of Petitioner's right to counsel at early stages of his custody after arrest, and at his preliminary hearing.

■ In support of his contention that he was denied a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution,[1] Petitioner states that more than three regular terms of court passed after his indictment, without trial, in violation of West Virginia Code § 62–3–21 (Michie 1966),[2]

---

[1]. It is established law that the Sixth Amendment right to a speedy trial applies to the states through the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). An excellent discussion of the federal concept of the speedy trial guarantee is contained in United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

[2]. W.Va.Code § 62–3–21 (Michie 1966) provides:
Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is

thereby entitling him to his release from the pending burglary indictment.[3]

Upon a thorough consideration of all the testimony presented, and of all the exhibits filed in the case, it appears to the Court that the state court proceedings in Petitioner's case occurred in the following sequence. On December 8, 1964, near the end of the September 1964 term of court in the Circuit Court of Fayette County, West Virginia, an indictment for burglary was returned against Petitioner and two others. On January 18, 1965, in the January 1965 term of court, Petitioner and his co-defendants failed to appear at their scheduled trials, and, their attorney being unable to explain their absence, a capias was issued for their arrest. Subsequently, the cause of the absence was revealed, namely that Petitioner and the others were delayed by a severe snowstorm. Attendance at the next regular term of court was assured by their attorney, and the case was continued generally to the following term of court.

At the May 1965 term of court, Petitioner's attorney sought separate trials for each of the defendants. This was achieved and one of Petitioner's co-defendants was tried and convicted at this term. The trials of Petitioner and his remaining co-defendant were then necessarily continued over to the next term, the apparent belief of all concerned being that a separate venire was necessary to insure ultimate fairness for each trial.

At the next regular term of court, the September 1965 term, the state presented a motion, strongly resisted by Petitioner, for a continuance in Petitioner's case, due to the absence, because of illness, of the complaining witness. The motion was granted and Petitioner's case was continued until the following term of court. It was at the January 1966 term of court that Petitioner's case was again scheduled for trial, and thereupon his guilty plea was entered.

■ Petitioner at one point claimed that five terms of court passed before his case was disposed of. In State v. DeBerry, 146 W.Va. 534, 120 S.E.2d 504 (1961), the West Virginia Supreme Court of Appeals in the syllabus by the Court, Syllabus Point #1, stated:

The three regular terms of a court essential to the right of a defendant to be discharged from further prosecution, pursuant to provisions of Code, 62–3–21, as amended, are regular terms occurring *subsequent* to the ending of the term at which the indictment against him is found. The term at which the indictment is returned is not to be counted in favor of the discharge of a defendant. (Emphasis added).

Therefore, in Petitioner's case, the September 1964 term in which he was indicted is not to be considered in totalling the terms passed without trial under West Virginia Code § 62–3–21 (Michie 1966).

■ In the January 1965 term of court it was Petitioner who did not appear in court at the scheduled time for

---

found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the state being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; * * *.

3. This statute is actually a pronouncement of the West Virginia legislative concept

of a speedy trial. In State ex rel. Smith v. DeBerry, 146 W.Va. 534, 538, 120 S. E.2d 504, 506 (1961) the Court observed: As often pointed out by this Court, the purpose of the pertinent statute is to assure a defendant a speedy trial. It is the *legislative adoption or declaration* of what, ordinarily, at least, constitutes a speedy trial within the meaning of Article III, Section 14 of the State Constitution, and of the Sixth Amendment to the Federal Constitution, and, of course, for the purpose intended should be liberally construed. (Citations omitted).

his appearance, thereby precipitating events terminating in a continuance. Due to Petitioner's inadvertence, though excusable, the delay was necessitated. As such this term may not be included in calculating the number of terms under the statute.[4]

In the May 1965 term Petitioner by counsel sought severance of his case from those of his co-defendants so that a separate trial could be had for each defendant. The use of this tactic is tantamount to a motion, by the two defendants not tried, for a continuance. Petitioner cannot be heard to complain of prejudice by denial of a speedy trial here, where the delay was to prevent submission of his case to a venire that could possibly be prejudiced after hearing a companion case. Accordingly, the May 1965 term should not be considered in computing the number of terms passing under the three-term rule.

Similarly, in the September 1965 term, although the continuance was granted on motion of the prosecuting attorney, and resisted by Petitioner, when the reason asserted as grounds for the motion is considered, it is evident that this term also may not be included in the computation of the number of terms passing under West Virginia Code § 62–3–21 (Michie 1966). A statutory exception to the operation of this provision, included in the provision itself, is that failure to prosecute within three regular terms of court entitles a defendant to discharge, "unless the failure to try him was caused by * * * the witnesses for the State being enticed or kept away, or prevented from attending by sickness * * *." This continuance was granted due to the ab-

sence of the complaining witness on account of illness. The conclusion to be reached here is that Petitioner is unable to cite this term as being within the statutory language of a regular term passing, without trial.[5]

Petitioner made no objection to any of the continuances except the final one. The issue of denial of a speedy trial was not raised at any stage of Petitioner's trial court proceedings, the allegation first being raised at post-conviction proceedings.[6] The ultimate analysis of Petitioner's claim leads to the conclusion that his case was disposed of within the requirements of the three terms rule statute after indictment. It is the holding of this Court that Petitioner was not denied his constitutional or statutory right to a speedy trial. In fact, under the circumstances presented here, Petitioner's case was handled in the only manner feasible and suitable in maintaining justice and equitable treatment to all parties involved.

Petitioner claims that his plea of guilty was entered involuntarily in that it was coerced by promises and threats made by his counsel. He alleges that by illegal plea bargaining, a deal was made by his counsel with the prosecuting attorney, whereby probation was obtained for Petitioner in exchange for his plea of guilty to the charge. Petitioner claims that had it not been for this agreement, he would have maintained his not guilty plea and stood trial.

Petitioner alleges that his originally employed counsel assured him that he would receive probation if he plead guilty. He claims to have received this assurance some time before he plead guilty. He stated that at all times he

4. See note 2 *supra*. The accused "failing to appear" is specifically set out as an exception to the operation of W.Va.Code § 62–3–21 (Michie 1966).

5. See note 2 *supra*.

6. "[T]he federal courts have consistently held that the right to a speedy trial is a personal right of the defendant and is deemed to have been waived by him if not promptly asserted." United States v.

Hill, 310 F.2d 601, 603 (4th Cir. 1962). Although not essential to this Court's holding, it would appear that Petitioner effectively waived this right in a manner sufficient to place this case within the general rule that such a waiver is a bar to the raising of the claim of a denial of right to a speedy trial by post-conviction means. See Annot., 57 A.L.R.2d 302, 336 (1958).

desired to go to trial. On becoming dissatisfied with his attorney, following the trial and resulting conviction, at an earlier term, of one of his co-defendants, who was represented by the same attorney, Petitioner hired a second attorney to assist in the defense of his case.

The second attorney was also hired by Petitioner's second co-defendant, and was present at that co-defendant's trial, occurring at the January 1966 term of court, immediately preceding Petitioner's scheduled trial. Petitioner testified that the second hired attorney never considered the merits of his case, but became highly incensed over developments in his co-defendant's trial, forcing Petitioner to plead guilty, the second attorney saying that Petitioner could not receive a fair trial at that state court, and by saying that he would not take Petitioner's case to trial. Petitioner testified further that his second, employed attorney told him that he had made a deal for a three-year probation, and felt Petitioner had no choice but to plead guilty. By this, Petitioner claims he was persuaded to plead guilty against his best judgment and desire.

Petitioner also alleges here that he did not know and was not apprised of the full effect and workings of probation, i. e., that if probation were violated, he could be sentenced to the penitentiary to serve the statutory penalty. He testified that if had known this fact, he would not have plead guilty.

Petitioner further cites in support of his position a comment made by the judge of the state court at his probation revocation hearing.[7] Petitioner feels that this statement strongly supports his position that his plea was the result of an improper, clandestine agreement for probation, thereby depriving the plea of its voluntariness.

Petitioner's wife and one of his co-defendants testified in support of Petitioner's testimony. Both testified that they were present when conversations between Petitioner and his second, employed attorney occurred. Their testimony was substantially identical to that of Petitioner. Petitioner's wife stated that she helped persuade Petitioner to plead guilty, feeling that under the circumstances no better choice was available.

The prosecuting attorney at the state court proceedings testified in rebuttal at the plenary hearing before this Court. He pointed out that one of Petitioner's co-defendants was tried and convicted at a prior term of court, and the second co-defendant was tried and convicted at the term at which Petitioner's case was set for trial. It was during this trial that the plea bargaining and the making of a deal supposedly occurred. The prosecutor testified that he indicated at an early time to Petitioner's first counsel that a guilty plea from Petitioner would place him in a position favorable for probation. The prosecutor said that it was during the deliberation of the jury in Petitioner's co-defendant's trial that he approached Petitioner's attorneys to discuss Petitioner's case. He testified that he explained to them that in light of Petitioner's favorable background, i. e., the lack of a long criminal record, in contrast to his co-defendants, and the own-

7. At the conclusion of the probation revocation hearing, held on May 8, 1967, the trial court judge made the following statement, recorded on page 68 of the transcript of that proceeding (Respondent's Exhibit No. 3):

THE COURT: As I view this matter, the court really has no choice at this point. As I recall it, Mr. Raleigh was originally placed upon probation, not as the result of an investigation made by this court, which ordinarily is the case before the court passes sentence on a man, but it was a situation in which the State of West Virginia, by its prosecuting attorney, and the defendant, by his counsel, entered into an agreement that they would jointly ask the court to place this man on probation, and he was placed on probation as a result of that agreement with the understanding, as I recall it, that if, under the interstate compact system he could be received for supervision in the State of Kentucky where he was a resident.

ing or operating of a business at his home residence, he felt that Petitioner was eligible and in good position for successful consideration for probation, should he plead guilty. He continued his testimony saying that *after* the guilty verdict had been returned against Petitioner's co-defendant, he was advised that Petitioner desired to plead guilty, on the assurance of a *recommendation* by the prosecutor for probation. The recommendation was then made and accepted by the court, and Petitioner was placed on three years probation.

Also testifying in this case was a third attorney present at Petitioner's state trial proceedings, who represented Petitioner's co-defendant, along with Petitioner's second, employed attorney. He recalled that Petitioner's attorney was confident that Petitioner would receive probation. He also recalled observing Petitioner and noted that he appeared extremely happy to receive probation.

The question this Court must now decide is, from all the evidence presented in Petitioner's case, whether Petitioner was influenced and coerced by plea bargaining between his counsel and the prosecuting attorney to the degree that he involuntarily entered the plea of guilty that he would not have otherwise entered. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." (Citations omitted). Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). Due to the conclusiveness of a guilty plea on the issue of guilt or innocence, "courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).

The burden of proof is placed upon Petitioner to establish by a preponderance of the evidence the circumstances rendering his guilty plea involuntary. Vanater v. Boles, 377 F.2d 898 (4th Cir. 1967). It is the conclusion reached by this Court that Petitioner has not effectively met this burden of proof in this case.

It cannot be disputed that "bargaining" took place in Petitioner's case. Petitioner chooses to call it an "illegal deal." But, in any event, no prejudice resulted to Petitioner. The plea bargaining that transpired in this case was carried on in the finest sense of that expression and under standards conducive to the accomplishment of substantial justice. Petitioner was shown to be a likely subject for probation, having a good record, a wife, a home and a business. During discussions with the prosecuting attorney, when these facts were pointed out, all agreed probation would be most appropriate for Petitioner. The prosecutor agreed to recommend the same to the trial judge, if Petitioner would plead guilty. Only the recommendation was agreed to and no absolute assurance of probation was offered. All of these matters were then openly presented to the trial judge and the recommendation made by the prosecutor was accepted, Petitioner receiving the probation as was anticipated.

Plea bargaining, in the proper sense, is a commonly used tool in efficient administration of justice, and its use in any case is not fatal per se. Under the proper circumstances and where carried out in the proper manner, it is accepted as a desired technique. See Bailey v. McDougall, 392 F.2d 155 (4th Cir. 1968); United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D. N.Y.1967). The idealistic accomplishment evolving from this type of plea bargaining is the case-by-case consideration of each individual accused in seeking a resolution equally beneficial to the protection of society and to the rehabilitation of the criminal. In Cortez v. United States, 337 F.2d 699 (9th Cir. 1964) the court set forth progressive ideas and guidelines for practice in this

sensitive area of plea negotiation. At page 701, the court said:

> We take judicial notice of the fact that the vast majority of those who are indicted for federal crimes plead guilty. We know, too that in many of the cases where this occurs the plea will be to one count, or less than all counts, of a multicount indictment, or to a lesser offense than that originally charged. In a sense, it can be said that most guilty pleas are the result of a "bargain" with the prosecutor. But this, standing alone, does not vitiate such pleas. A guilty defendant must always weigh the possibility of his conviction on all counts, and the possibility of his getting the maximum sentence, against the possibility that he can plead to fewer, or lesser, offenses, and perhaps receive a lighter sentence. The latter possibility exists if he pleads guilty, as Cortez did, to the whole charge against him.
>
> No competent lawyer, discussing a possible guilty plea with a client, could fail to canvass these possible alternatives with him. Nor would he fail to ascertain the willingness of the prosecutor to "go along." * * * At the same time, the lawyer is bound to advise his client fully as to his rights, as to the alternatives available to him, and of the fact that neither the lawyer nor the prosecutor nor anyone else can bargain for the court. There is nothing wrong, however, with a lawyer's giving his client the benefit of his judgment as to what the court is likely to do, always making it clear that he is giving advice, not making a promise.
>
> The important thing is not that there shall be no "deal" or "bargain", but that the plea shall be a genuine one, by a defendant who is guilty; one who understands his situation, his rights, and the consequences of the plea, and is neither deceived nor coerced.

The method of plea negotiation and agreement practiced in Petitioner's case appears to fall within the realistic and pragmatic standards set out above.

What motivated Petitioner to plead is of prime importance. Considering the factual pattern in this case, it would appear that Petitioner's decision was at least partially influenced by the guilty jury verdicts returned against his co-defendants. His final decision was reached after the return of the guilty verdict in the second case of which he was the third, final defendant. It also would appear that Petitioner evaluated his guilt and simply decided to plead guilty since he felt he would be found guilty.

Analyzing the evidence presented, it is possible that other motivations combined to influence and guide Petitioner. Arguably, one could conclude that a certain amount of pressure was placed upon Petitioner to plead guilty. The alternative of pleading guilty was brought to Petitioner's attention and discussed with his attorneys. His counsel then very appropriately, as outlined in *Cortez,* discussed this possible alternative with the prosecuting attorney to see if he would "go along," and obtained a favorable response. The attorneys, then, perhaps emphatically, advised Petitioner of what they thought he should do, and what they thought the court would do. No indication was given to Petitioner that the trial court judge had agreed to, or even discussed, any "deal." Petitioner does not assert that he was deceived in any manner. There was no misunderstanding as Petitioner received what he expected—probation. Any "pressure" involved was that on the Petitioner to determine which of the alternatives open to him would he pursue.

There is no substantial area of support in this case that the agreement reached caused the complained of plea to be involuntary. On the contrary, it is the conclusion of this Court that Petitioner's plea was genuine, not coerced by illegal behind-the-scenes deal-making, but entered into by Petitioner after consideration of his position, and the likeli-

hood of his receiving probation, based on discussions with his counsel and on an understanding that the prosecutor would recommend but not guarantee probation.

Petitioner claims that the full effect of the entry of a guilty plea was not explained to him, in that he was not told of the consequences should probation be revoked. Had he known and understood the contingency of probation revocation, Petitioner now claims that he would not have entered a guilty plea. The transcript prepared of the state trial court proceedings had in the presentation and acceptance of Petitioner's guilty plea shows conclusively that he was fully advised and necessarily aware of the workings and contingencies of probation.[8] Petitioner now seeks to reverse his then-expressed understanding of the consequences of a guilty plea and the effect of violation of probation, as reflected by the record. He has failed to carry the burden of proof as to this allegation. There is nothing presented here, other than Petitioner's conclusary statement that points toward lack of understanding in this regard.

Does the singular fact that an agreement is prevalent in the disposition of Petitioner's case render the plea invalid? This Court feels not. The pattern of negotiation and agreement evident in Petitioner's case substantially follows the outline of suggested practice of plea discussions and plea agreements sanctioned by the American Bar Association. ABA, Standards Relating to Pleas of Guilty, Part III (Tent. Draft 1967).[9]

---

8. Pertinent parts of the transcript regarding Petitioner's entry of his guilty plea and being placed on probation (respondent's Exhibit No. 2), read as follows:

> THE COURT: Vance Raleigh, what is your plea to this indictment?
>
> VANCE RALEIGH: Guilty, sir.
>
> THE COURT: It is my understanding that the prosecuting attorney and your defense counsel, Mr. Thrift and Mr. Hopkins, have agreed and have asked the Court to arbitrarily place you on probation. As I understand it, you have not agreed to any length of probation.
>
> MR. SUMMERFIELD: That is correct, your Honor, and that is the State's recommendation.
>
> *     *     *     *     *
>
> THE COURT: Do you understand what you have done here?
>
> VANCE RALEIGH: Yes, sir.
>
> THE COURT: And you understand fully that should you at any time during the period of your probation—during the three years or longer of your probation, if it should be extended—should you violate any law of the State of West Virginia, or Kentucky, or any state in this nation, that you would then throw on this Court the responsibility of revoking your probation and sentencing you to the penitentiary for not less than one and not more than fifteen years?
>
> VANCE RALEIGH: Yes, sir.

9. The drafters proposed the following:

> PART III.  PLEA DISCUSSIONS AND PLEA AGREEMENTS
>
> 3.1 Propriety of plea discussions and plea agreements.
>
> (a) In cases in which it appears that the interest of the public in the effective administration of criminal justice (as stated in section 1.8) would thereby be served, the prosecuting attorney may engage in plea discussions for the purpose of reaching a plea agreement. He should engage in plea discussions or reach a plea agreement with the defendant only through defense counsel, except when the defendant is not eligible for or does not desire appointment of counsel and has not retained counsel.
>
> (b) The prosecuting attorney, in reaching a plea agreement, may agree to one or more of the following, as dictated by the circumstances of the individual case:
>
> (i) to make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or nolo contendere.
>
> *     *     *     *     *
>
> 3.2 Relationship between defense counsel and client.
>
> (a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should insure that the decision whether to enter a plea

The broad guideline suggested is that plea negotiation is proper where the "effective administration of criminal justice" is accomplished. The prosecuting attorney here properly dealt through counsel for Petitioner and not with Petitioner himself.[10] The prosecutor agreed to one of the agreements approved by that publication—to recommend a particular sentence if the defendant enter a guilty plea.[11] Petitioner then consented to plead guilty, after a rather candid assessment of Petitioner's alternatives made by his counsel. Significantly, the trial judge did not participate in the plea negotiations.[12] The trial judge evidently was informed of the discussion and agreement of recommendation prior to the entry of the plea, and, in addition, the matter was placed on record in open court.[13] From the record, it is apparent that the trial court judge gave his tacit approval to the agreement.

Contrary to Petitioner's interpretation, the comment made by the trial court judge at Petitioner's probation revocation hearing [14] does not support Petitioner's allegation. Analysis of the comment, in light of the factual background development of the agreement involved,

reveals that an honest presentation of the agreed to matters was made to the court in a manner contemplated by the standards set out by the American Bar Association.

The procedure of plea agreement practiced here materially complies with the pragmatic standards proposed by eminent legal scholars as sound American Bar Association policy. The procedure followed in this case—whether it be called plea bargaining, plea negotiating, plea agreement, deal or compromise—is representative of the aboveboard accomplishment of justice, at minimum expense and maximum efficiency, while maintaining uppermost regard for the protection of individual rights. Here is an example of the state, pressured with far-reaching powers of prosecution and vindication of offenses against society, being satisfied with the obtaining of substantial justice without seeking vengeful retribution. It is an example of an agreement made which was highly beneficial to both parties—a saving of time and expense to the state and a favorable recommendation for probation made by the prosecuting attorney for the Petitioner. The agreement reached here was made part of the public rec-

---

of guilty or nolo contendere is ultimately made by the defendant.

(b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and of considerations deemed important by him or the defendant in reaching a decision.

3.3 Responsibilities of the trial judge.

(a) The trial judge should not participate in plea discussions.

(b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the in-

formation in the presentence report is consistent with the representations made to him.

\* \* \* \* \*

(c) When a plea of guilty or nolo contendere is tendered or received as a result of a prior plea agreement, the trial judge should give the agreement due consideration, but notwithstanding its existence he should reach an independent decision on whether to grant charge or sentence concessions under the principles set forth in section 1.8.

\* \* \* \* \*

10. This is the channel of negotiation suggested by ABA. See note 9 *supra*, § 3.1 (a).

11. See note 9 *supra*, § 3.1(a) (i).

12. This, too, falls within the suggested standards. See note 9 *supra* § 3.3.

13. See note 8 *supra*.

14. See note 7 *supra*.

ord and the negotiations were carried out in the ventilated atmosphere of open-handedness and truthfulness, replete with good faith and fairness, with no underlying covert or extrajudicial factors. Cf. Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968). As such, the case represents the effective and successful use of an efficient tool available for the accomplishment of fundamental justice.

Petitioner also contends that he was represented by ineffective counsel, alleging that hired counsel refused to take his case to trial, advising Petitioner to plead guilty and to accept the agreement arranged for his probation. Petitioner has not carried the burden of proof of this allegation by the preponderance of the credible evidence presented to this Court. Post v. Boles, 332 F.2d 738 (4th Cir. 1964), cert. denied 380 U.S. 981, 85 S.Ct. 1346, 14 L.Ed.2d 274 (1965); Hall v. Warden, Maryland Penitentiary, 313 F.2d 483 (4th Cir. 1963). See generally 39 C.J.S. *Habeas Corpus* § 100c (1944). It cannot be said that carrying on plea negotiations and formalizing a plea agreement constituted ineffectiveness on the part of counsel in Petitioner's case. Conversely, it was the exercise of conscientious—and ultimately successful—effort to obtain the greatest benefit for Petitioner. The evidence further shows that counsel served Petitioner's cause in good faith, giving Petitioner sound advice based on practical evaluation of the circumstances and based on professional judgment and wisdom. As such, the due process requirement for effective counsel was sufficiently met. Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965). Moreover, representation here was far superior to that which could be called a farce or a mockery of justice, the standard for ineffectiveness employed by the courts. Knowles v. Gladden, 378 F.2d 761 (9th Cir. 1967); Root v. Cunningham, *supra.*

In addition Petitioner alleges that he was subjected to physical mistreatment inflicted with the purpose of obtaining incriminating statements from Petitioner. He alleges that he was re-strained and slapped and kicked. But by Petitioner's own testimony, the alleged mistreatment yielded no results. Petitioner signed no confession and made no statement to anyone. In fact, Petitioner testified at his evidentiary hearing that he told those involved to "beat all you want, I have nothing to tell you." Petitioner makes no allegation that the alleged mistreatment coerced or was in any way connected with his decision to enter a plea of guilty. Indeed, no confession was presented or urged with which a plea could have been coerced. If assumed to be true, Petitioner's allegation raises no constitutional deprivation cognizable under federal habeas corpus. 28 U.S.C.A. § 2254(a) (Supp. 1967).

Petitioner has also presented testimony that he asked for and was denied the right to call an attorney when arrested and several times after arrest, both before and at his preliminary hearing. The testimony of Petitioner's co-defendant supports this contention. Testimony was presented here by the chief of police of the town where Petitioner was arrested and confined, a city patrolman who allegedly denied Petitioner an attorney on request, and the justice of the peace before whom Petitioner was brought for his preliminary hearing, contradicting Petitioner's allegation. They testified there was no request from Petitioner for an attorney.

It is not necessary for the Court here to resolve this factual issue. In West Virginia the preliminary hearing itself is generally not considered to be a critical stage of the criminal proceeding, and as such, absence of counsel at that stage is not a violation of Petitioner's federal constitutional rights. Guthrie v. Boles, 261 F.Supp. 852 (N.D. W.Va.1967). In this case Petitioner shows no prejudice, even if his allegations are assumed to be true. He made no statement at the preliminary hearing and entered a plea of not guilty. Where a plea of guilty is given voluntarily and understandingly, as so found as a matter of fact in this case, it is

not only conclusive of the issue of guilt or innocence, "but is also a waiver of all non-jurisdictional irregularities that may have occurred in prior proceedings. Carpenter v. Wainright, 372 F.2d 940 (5th Cir. 1967); Hughes v. United States, 371 F.2d 694 (8th Cir. 1967); United States v. Ptomey, 366 F.2d 759 (3rd Cir. 1966)." Stover v. Coiner, 290 F.Supp. 852, 854 (N.D.W.Va.1968). Thus, the deprivation alleged to have occurred at this early stage in Petitioner's case was effectively waived by Petitioner on entering a voluntary plea of guilty, and, as such, does not reach federal constitutional proportions.

For the reasons stated above, an order will be entered denying the relief sought and dismissing the petition.