THE PEOPLE v. THOMAS J. LILLEY.

Homicide—Manslaughter—Assaults with intent, etc.

43  521
111  370

43  521
115  312
115  606

A mere intent to commit violence, accompanied by acts preparatory thereto, will not sustain conviction for an assault if it goes no farther. There must be present ability to carry out the intent, and the act done must be criminal and sufficiently proximate to the deed intended; and it is for the jury, under proper instructions, to determine whether it has proceeded far enough.

Where an act is done with intent to commit an assault, but the intent is voluntarily abandoned, or is prevented while the distance between the parties is too great to commit an actual assault, there can be no conviction as for an assault.

An assault is an inchoate violence to the person of another with the present means of carrying the intent into effect: threats are not enough; there must be violence actually offered, and within such distance that harm may follow it if the assailant is not hindered.

An assault with intent to commit manslaughter is not an offense known to the law in Michigan.

There can be no specific intent without deliberation, and as an act done on sudden impulse, like manslaughter, cannot be deliberate, there can be no such offense as an assault with intent to commit manslaughter.

In a statute treating of offenses committed with a particular intent involving deliberation, it seems that general language referring to assaults with intent to commit any other felony must also contemplate deliberate intent.

Manslaughter is the unlawful killing of another without malice or premeditation, though it often involves a direct intent to kill; where voluntary it arises from the sudden heat of the passions and is the result of temporary excitement wherein the reason is so disturbed or obscured by passion that an ordinary man of fair average disposition is liable to act rashly or without due deliberation or reflection and from passion rather than judgment.

A homicide is murder and not manslaughter where there is evidence of actual malice or if the provocation to it was resented in a brutal and ferocious manner evincing a malignant disposition, or if before it was committed there was time for the perpetrator's passion to subside and his blood to cool.

Exceptions before judgment from Cass. Submitted April 21. Decided June 9.

43 MICH.—66.

ASSAULT with intent to kill and murder. Respondent was found guilty of an assault with intent to commit manslaughter.

*Harsen D. Smith*, prosecuting attorney, for the People. Voluntary manslaughter may involve an unlawful intent to kill, *State v. Throckmorton* 53 Ind. 354; *Murphy v. State* 31 Ind. 511; it often involves specific intent to kill, *People v. Scott* 6 Mich. 295; *Maher v. People* 10 Mich. 212; *Hurd v. People* 25 Mich. 412; there may be an assault with intent to commit manslaughter, Bish. Stat. Cr. § 508; *State v. Calligan* 17 N. H. 253; *Wilson v. People* 24 Mich., 410; *State v. Reed* 40 Vt. 603; it is simply an assault with intent to kill unlawfully without malice, *State v. White* 45 Ia. 325; and was specified in Rev. Stat. 1838, p. 624, §20.

*J. J. Van Riper* and *F. J. Atwell* for respondent. Manslaughter is free from unlawful intent, Bicknell's Crim. Pr. 292; 1 Hale P. C. 455–6; 1 Russ. Cr. 520; assault with intent to commit manslaughter is a confusion of terms, as it implies deliberate intent, *Wilson v. People* 24 Mich. 411; *Wright v. People* 33 Mich. 300; *Morman v. State* 24 Miss. 54; *Barcus v. State* 49 Miss. 17; *State v. White* 41 Iowa 316; 20 Amer. 602; there was no such offense at common law, *State v. Waters* 39 Me. 54; *Rex v. Woodfall* 5 Burr. 2661.

MARSTON, C. J. The respondent was tried upon an information which charged him with having made an assault upon one Horace McKenzie, with intent then and there etc. to kill and murder him. Under instructions the respondent was found guilty of an assault with intent to commit manslaughter. The case comes here on exceptions before judgment, and while quite a large number of exceptions were taken and have been presented in this court, but few will be considered, as they reach the merits.

A difficulty had arisen between the person ·claimed to have been assaulted and the father of respondent as to the proper division of certain wheat then being threshed, and which led to blows. It appears the respondent was struck on the head by McKenzie, and that he thereupon "retreated" or walked towards the straw-stack some ten or twelve feet distant. There is some conflict in the evidence as to what thereupon took place, but as respondent was entitled as a matter of right to have the case submitted to the jury under instructions applicable to the evidence, favorable as well as unfavorable to him, we must for the present purpose consider the charge as given and the refusals in view of the evidence most favorable to the accused.

After respondent reached the straw-stack, he turned around, took a knife out of his pocket, made some threat and advanced towards McKenzie. After he had advanced one or two steps he was caught by a bystander, and there is some question as to whether the knife at this time was open or not, and witnesses testified that he was then ten to fifteen feet distant from McKenzie—the person assaulted,—and that respondent then put the knife in his pocket. This practically ended the matter. The court as requested by the prosecuting attorney instructed the jury:

"An assault is an attempt or offer with violence to do a corporal hurt to another; an offer to inflict bodily injury by one who is rushing upon another, is an assault although the assailant be not near enough to reach his adversary, if the distance be such as to induce a man of ordinary firmness to believe that he is in immediate danger of receiving such threatened injury, and any intent to commit violence, accompanied by acts which, if not interrupted, will be followed by bodily injury, is sufficient to constitute an assault, although the assailant may not be at any time within striking distance. And in this case, if Lilley, being within ten, fifteen or twenty feet of McKenzie, drew his knife from his pocket and commenced to open the same, and started towards McKenzie in a violent manner, threatening that he would do him bodily injury, and after advancing towards him a few steps

and while' rushing towards McKenzie he was stopped by Dillman, Lilley would then be guilty of an assault."

The court declined to charge—

*Sixth.* "An assault in law is an effort to strike or cut within striking distance, and if the prisoner started to strike or cut McKenzie, and before he got within striking or cutting distance stopped and voluntarily abandoned his purpose, or if before coming within striking or cutting distance was stopped by others and then abandoned his purpose, it would not constitute an assault in law."

*Seventh.* "In order to constitute the crime of assault with intent to murder, the attempt to strike or cut must be within striking or cutting distance; and if the prisoner started to strike or cut McKenzie, and before he got within striking or cutting distance stopped and voluntarily abandoned his purpose, or before coming within striking or cutting distance was stopped by others, and then voluntarily abandoned his purpose, it would not at law constitute an assault with intent to murder, as charged in the first and second counts in the information."

*Eighth.* "If the jury find that the prisoner took out his knife, but did not open it, or, if opened by him, he did not attempt to cut McKenzie with it, or if they find that the prisoner, before coming within striking distance, voluntarily closed the knife or surrendered it to Dillman, there was no assault, and the offenses charged in the information were not committed."

The instructions given and those refused raise the question as to what in law constitutes an assault. Beyond this it may be very questionable whether, under any authority, the instructions as given could be fully sustained, even if applied to any facts in this case; and irrespective of what may be found to constitute an assault, it may also be a matter of some question whether the requests should not have been given.

The instruction as given would seem to lay down the general proposition "that any intent to commit violence accompanied by acts which, if not interrupted, will be followed by bodily injury, is sufficient to constitute an assault, although the assailant may not be at any time within striking distance." Now there may be an intent to commit violence, and this accompanied by acts pre-

paratory thereto, which if followed up would clearly constitute an assault, yet owing to the distance and surrounding circumstances, no possible assault would have been committed. Thus, one with a direct intent to do grievous bodily harm may purchase a deadly weapon, or having one he may, with like intent, put it in a condition to use with deadly effect. Yet if the act stop here, it may as a general proposition be said the party could not be convicted of an assault, and this irrespective of what may have caused the party to proceed no farther in the attempt. Other facts must be added, and this we shall see must be a present ability to carry out the intent. The act done must have been sufficiently proximate to the thing intended. It may be so remote, although a distinct and essential act, coupled with the intent, as to fall far short of constituting an assault. The act done must not only be criminal but it must have proceeded far enough towards a consummation thereof, and this must necessarily be a question for the jury under proper instructions. 1 Bishop Cr. L., ch. 26; also § 323. So, clearly, where the intent is formed and some act done in performance thereof, but the party voluntarily abandons his purpose, or is prevented from proceeding farther, and this while at a distance too great to make an actual assault, he could not be convicted of an assault.

What then constitutes an assault in law? It might be somewhat difficult to reconcile all the authorities upon this subject, and we shall not attempt it. Some of the tests, as putting the person assaulted in fear, cannot be relied upon, as evidently an assault may be made upon a person, even although he had no knowledge of the fact at the time.

An assault is defined to be an inchoate violence to the person of another, with the present means of carrying the intent into effect. Threats are not sufficient; there must be proof of violence actually offered, and this within such a distance as that harm might ensue if the party

was not prevented. 2 Greenl. Ev. § 82; 3 Greenl. Ev. § 59; 1 Bishop's Cr. L. § 419; 3 Bl. Com. 120, note 3.

We are of opinion, therefore, that the charge of the court as to what would constitute an assault was not sufficiently guarded and had a tendency to mislead the jury. And, in view of all the evidence in this case, we are also of opinion that the sixth, seventh and eighth requests should have been given, and this in view of the conflict as to the distance which respondent was from McKenzie, when stopped, and of the nature and character of the alleged assault. There may have been evidence in the case tending to show that when respondent was stopped, although not then within striking distance, yet so near as to cause immediate danger if not stopped, so that a jury would have been at liberty to have found that an assault was committed, yet there was evidence tending to show that none was committed, and in view thereof these requests should have been given.

The next important question is whether in this State there is such an offense known to the law as an assault with intent to commit manslaughter. If such an offense can be committed, two things are necessary to the commission thereof,—an actual assault, coupled with an intent to take life, and this under such circumstances that the accused would not be guilty of murder if death should ensue.

The specific intent is necessary to complete the offense, and raise it above the grade of a mere assault. *Wilson v. People* 24 Mich. 410. While the intent must be established, it need not be by direct evidence, as of threats: it may be drawn as an inference from all the facts. *People v. Scott* 6 Mich. 296; *People v. Potter* 5 Mich. 7.

In a case of this character we have only to deal with voluntary manslaughter. This "often involves a direct intent to kill, but the law reduces the grade of the offense because, looking at the frailty of human nature, it con-

siders great provocations sufficient to excite the passions beyond the control of reason." *People v. Scott* supra. "Manslaughter, when voluntary, arises from the sudden heat of the passions; murder, from the wickedness of the heart." Manslaughter is "the unlawful killing of another without malice, either express or implied." 4 Bl. Com. 191; 3 Greenl. Ev. § 119. The offense is one that is committed without malice and without premeditation; the "result of temporary excitement, by which the control of the reason was disturbed, rather than of any wickedness of heart, or cruelty or recklessness of disposition." The true general rule is "that reason should, at the time of the act, be disturbed or obscured by passion to an extent which might render ordinary men, of fair average disposition, liable to act rashly or without due deliberation or reflection, and from passion, rather than judgment." *Maher v. The People* 10 Mich. 220. Where the provocation falls short of this, or if there was time for the passion to subside and the blood to cool, or if there is evidence of actual malice, or if the provocation be resented in a brutal and ferocious manner, evincing a malignant disposition, in all such cases, if death ensue the offense would be murder. To reduce the offense to manslaughter all these things must be wanting, and the act must be done while reason is obscured by passion, so that the party acts rashly and without reflection. As was said in *Nye v. People* 35 Mich. 19 it would be a "perversion of terms to apply the term 'deliberate' to any act which is done on a sudden impulse," under such circumstances.

Is then an intent thus formed, without malice, deliberation or reflection, but rashly, and while the reason is obscured by passion caused by a sufficient provocation, such as the law contemplates in cases of assault with intent to commit a felony?

An examination of our statutes will show that a punishment is provided for those who shall maim or disfigure another in a certain manner, as well as those privy to

such intent. Comp. L. § 7520. Also any person who shall assault another with intent to maim or disfigure in any of the ways mentioned. § 7521. Attempts to commit the crime of murder and assaults with like intent are provided for. §§ 7522–3. Assaults made in connection with robbing, stealing and taking from the person, such robber being armed with a dangerous weapon, with intent, if resisted, to kill or maim, or being so armed shall assault another with intent to rob. So assaults with like intent, where not so armed, are provided for by §§ 7524–5–7. Malicious threats with intent to extort money or any pecuniary advantage, or with intent to compel the person threatened to do any act against his will; assaults with intent to commit the crime of rape; kidnapping with intent to sell, etc.; poisoning food with intent to kill or injure any person, or willfully placing poison in a well, etc., with like intent; enticing away a child with intent to detain or conceal; administering medicines to any woman pregnant with a quick child, with intent thereby to destroy such child; administering stupefying drugs, with intent, while such person is under the influence thereof, to induce him to enlist, are all provided for in the same chapter, 244 of the Compiled Laws.

In each and every of these cases it will be seen the intent is a deliberate one. So in the section 7537, under which it is claimed this case comes, "if any person shall assault another, with intent to commit any burglary, or any other felony,"—here the assault with intent to commit the burglary,—the intent is a deliberate one. In none of these cases can the intent be one formed under such circumstances as would reduce a voluntary homicide to manslaughter. When, therefore, in a chapter and section devoted entirely, in so far as it speaks of offenses committed with a particular intent, such intent is a deliberate one, must not the general language, referring to assaults with intent to commit any other felony, in like manner have reference to cases of deliberate intent? *McDade v. People* 29 Mich. 50.

Had the assault been committed in this case and death had ensued, the intent might have been inferred from all the circumstances. The homicide, if not excusable, would have furnished evidence of the intent. In cases of assault with intent to commit a felony, a specific intent must be found to exist, and it is very difficult to imagine how such a specific intent can be found to exist in the absence of reflection and deliberation. When once it appears that the assault was made with intent to take life, under circumstances where the killing would not be lawful or excusable, then, if under such circumstances death should ensue, the party would be guilty of murder. It seems like a contradiction of terms to say that a person can assault another with intent to commit manslaughter. See also *Wright v. People* 33 Mich. 301.

As this case now stands the respondent may be convicted of an assault, and a new trial must therefore be ordered.

The other Justices concurred.