PEOPLE v COOPER

Opinion of the Court

1. Homicide—Assault and Battery—Assault With Intent to Murder—Attempted Murder—Inchoate Violence—Present Means—Statutes.

The offer of inchoate violence to the person of another with the intent to murder, coupled with the present means to carry the intent into effect within such distance that harm might actually ensue if the party was not prevented constitutes an assault with intent to murder, and where there is such an assault a verdict of guilty of attempted murder for the same act would not be proper under the statute.

2. Constitutional Law—Double Jeopardy—Waiver.

A claim of double jeopardy must be raised before or during trial or it is waived.

3. Constitutional Law—Federal and State Prosecutions—Double Jeopardy—Same Act.

A person may be liable to punishment for infraction of law of the United States and of a state for the same act.

4. Constitutional Law—State and Municipal Prosecutions—Sovereigns—Double Jeopardy.

A municipality is not a separate sovereign but merely a creature of the state and consequently successive state and municipal convictions based on the same acts are barred by the double jeopardy clause of the United States Constitution.

5. Criminal Law—State and Federal Prosecutions—Same Act—Collateral Estoppel.

Successive state and Federal prosecutions for the same act do not involve the same parties or their privies and, therefore, the rule of collateral estoppel, which bars litigation between the

References for Points in Headnotes

[1, 6] 40 Am Jur 2d, Homicide § 568 et seq.
[2–5] 21 Am Jur 2d, Criminal Law §§ 165, 166, 209, 476.

same parties in any future lawsuit over an issue that has once been determined by a final judgment, does not apply.

DISSENT IN PART, CONCURRENCE IN PART BY V. J. BRENNAN, J.

6. HOMICIDE—ATTEMPTED MURDER—ELEMENTS—MEANS—ASSAULT AND BATTERY.

*A conviction of attempted murder should be affirmed where under the facts all of the elements to establish attempted murder, as well as the means to commit it, were present.*

Appeal from Calhoun, Ronald M. Ryan, J. Submitted Division 3 November 15, 1974, at Lansing. (Docket No. 17387.) Decided February 10, 1975. Leave to appeal applied for.

Marx E. Cooper was convicted of attempted murder, bank robbery, and assault with intent to rob being armed. Defendant appeals. Reversed as to attempted murder; affirmed as to the remaining convictions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stanley Everett,* Prosecuting Attorney, for the people.

Marx E. Cooper, *in propria persona.*

Before: BRONSON, P. J., and D. E. HOLBROOK and V. J. BRENNAN, JJ.

D. E. HOLBROOK, J. Defendant Marx Ernest Cooper was convicted by a jury of the crimes of (1) attempted murder, MCLA 750.91; MSA 28.286; (2) bank robbery, MCLA 750.531; MSA 28.799; and, (3) assault with intent to rob being armed, MCLA 750.89; MSA 28.284. He was sentenced on October 1, 1971, on each count to three identical terms of 5 to 25 years in prison, same to run concurrently. Defendant filed a motion for a new trial and amended the same three times. This was heard by

the trial court and after the filing of briefs on March 28, 1973, an order denying the motion for new trial was filed May 4, 1973. Defendant appeals as of right from the denial of his motion for a new trial.

Two issues are presented for determination in this appeal.

## I

Did the trial court commit reversible error in denying defendant's motion to dismiss the attempted murder count (one) of the information when that count was based on MCLA 750.91; MSA 28.286?

In pertinent part the applicable statute reads as follows: "Any person who shall attempt to commit the crime of murder by poisoning, drowning, or strangling another person, or by any means not constituting the crime of assault with intent to murder * * * ". The trial court and both the people and the defendant agree that if an assault was committed in the attempt to commit the crime, that a verdict of guilty to count 1 would not be proper.

The trial court charged the jury in this regard as follows:

"Now what is the legal definition of assault? Assault is defined as an attempt or offer with force and violence to do corporal hurt to another coupled with a present ability to carry the intention into effect. With this definition in mind you will determine whether the defendant, Marx Cooper, made an assault upon Robert Houghtaling with the intent to kill him. If the defendant did make an assault upon Mr. Houghtaling, the defendant will not be guilty of committing the offense in count 1. If the defendant did not make an assault

upon Robert Houghtaling but did attempt to commit the crime of murder by attempting to detonate the explosive device as charged, therefore the defendant would be guilty of committing the offense of attempted murder if you find that he was sane at the time of the commission of the offense."

To resolve this issue we turn to the facts. On December 18, 1970, defendant entered the Michigan National Bank at Battle Creek, Michigan. Under the pretext of having business to transact with the bank he persuaded Harold Dickson to take him into a private office. After arriving in the private room, defendant proceeded to give Dickson pretyped messages and placed certain objects on the desk. The pertinent testimony is as follows:

*"Q. (by Mr. Everett, prosecuting attorney):* After handing you this, or before, or at any time, did he remove anything from his case?

*"A. (by Mr. Dickson):* Yes. During presentation to me of the printed instructions he also removed from his luggage certain items, placing them on the table between us.

*"Mr. Everett:* I am going to read from People's Exhibit 4, which is also typewritten. It says: 'The device on your desk is the master control radio relay unit. Signals are relayed to two hidden powerful satellite high explosive TNT charges placed somewhere in the main foyer. The quote, speaker, unquote device on your desk is also a powerful bomb loaded with TNT which can destroy anything or anyone within a one-hundred foot radius. It also has a high gain receiver and transmitter and can be activated from up to thirty miles radius. Do not tamper with unit on desk. Will go off if jolted or moved. Safeguards built in. Hand document back to agent.'

*"Q.* Was this document handed to you?

*"A.* He handed it to me to read.

*"Q.* At that time was there any of this paraphernalia on the desk?

"*A.* Yes, the device he was talking about in there was there, plus I recall some other various items.

"*Q.* Could you step down here a minute and tell us whether any of these in the box were among the things which were on the desk?

"*A.* This he placed directly between us, the object he is referring to in that."

Defendant also gave him a card demanding $375,-000. Mr. Dickson was able to alert the bank employees and while Dickson was on the errand to get the money, four policemen arrived. Lt. Robert Houghtaling and Detective Savage entered the room where defendant was sitting, subdued him and took the bomb away from him. At the time the police entered the room, defendant grabbed the bomb from the nearby table. Defendant testified and gave an account of planning the bank robbery with the bomb and using a complicated made up telephone to convince the bank officer that he had an accomplice which was untrue. Defendant said that when the police entered the room he had the bomb in his hands, that he had full control of it and that he was going to plunge the red button, then thought of his son and said, "I am sorry". By that time the officers had gained control of the bomb. There is no question concerning the fact that this bomb was an actual bomb, made of a detonator and dynamite.

This first issue is a close question. We turn to the information in the case. Count 1 reads as follows:

"One Marx Ernest Cooper, at the City of Battle Creek, did then and there feloniously, wilfully and of his malice aforethought, attempt to kill and murder one Robert Houghtaling, by attempting to detonate an explosive device, but the said Marx Ernest Cooper was

then and there intercepted and prevented in the execution of such attempted murder."

The trial judge's definition of assault was proper, and for further light we turn to the definition of assault in the case of *People v Lilley,* 43 Mich 521, 525–526; 5 NW 982, 985 (1880).

"An assault is defined to be an inchoate violence to the person of another, with the present means of carrying the intent into effect. Threats are not sufficient; there must be proof of violence actually offered, and this within such a distance as that harm might ensue if the party was not prevented. 2 Greenl Ev, § 82; 3 Greenl Ev, § 59; 1 Bishop's Cr L, § 419; 3 Bl Com 120, note 3."

It appears to the Court that there was a beginning (inchoate) violence to the person of another. The offer of violence was complete when the defendant took the bomb in his hands and was in the process of detonating it. There was no question about the capability of the bomb to harm not only those in the room, but also those who were some distance away.

We find it illogical to interpret the crime charged in the information under the facts present as containing less than an assault. We therefore find that count 1 was improperly brought and the conviction in count 1 is reversed and dismissed.

## II

Was defendant "twice put in jeopardy" in violation of the US Const, Am V and Am XIV, and Michigan Const 1963, art 1, § 15 by being brought to trial in the state court after his acquittal of similar charges, based upon the same transaction, in the United States District Court?

Defendant prior to being brought to trial in our state court in the instant case was acquitted in a United States District Court criminal trial wherein he was charged with bank robbery.

Defendant did not raise this issue before or at trial. Our Supreme Court has ruled that a claim of double jeopardy must be raised before or during trial or it is waived. *People v Powers,* 272 Mich 303; 261 NW 543 (1935); and *People v McDonald,* 306 Mich 65; 10 NW2d 309 (1943).

Defendant has presented a very comprehensive brief on this issue and because of the importance of this question, we proceed to consider and decide it. In the case of *In re Illova,* 351 Mich 204; 88 NW2d 589 (1958), it was ruled that a defendant who had violated both State and Federal laws was liable to each sovereign and subject to prosecution by each.

It has long been the law that a person may be liable to punishment for infraction of law of the United States and of a state for the same act. *United States v Lanza,* 260 US 377; 43 S Ct 141; 67 L Ed 314 (1922); *Hebert v Louisiana,* 272 US 312; 47 S Ct 103; 71 L Ed 270; 48 ALR 1102 (1926); *Jerome v United States,* 318 US 101; 63 S Ct 483; 87 L Ed 640 (1943), and *Abbate v United States,* 359 US 187; 79 S Ct 666; 3 L Ed 2d 729 (1959). A near duplicate of the instant case was considered and decided in *Bartkus v Illinois,* 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959), *reh den,* 360 US 907; 79 S Ct 1283; 3 L Ed 2d 1258 (1959). There, the defendant was charged with bank robbery, was acquitted in the Federal court, and was later tried and convicted in the state court. The majority of the Supreme Court held that this did not constitute double jeopardy and the conviction was af-

firmed. The defendant asserts that we should rule
contrary to the decisions in *Bartkus* and *Illova,
supra;* further, that we should consider applying
the doctrine given in the ruling in *Benton v Mary-
land,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707
(1969). In answer to this assertion we adopt the
recent ruling on this issue in another duplicate of
the instant case found in *Martin v Rose,* 481 F2d
658, 659–660 (CA 6, 1973); *cert den* October 9,
1973, 414 US 876; 94 S Ct 86; 38 L Ed 2d 121
(1974), wherein it is stated:

"Appellant urges that *Bartkus* no longer has continu-
ing validity, particularly in view of recent Supreme
Court decisions in such cases as *Benton v Maryland,*
395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969); *Waller
v Florida,* 397 US 387; 90 S Ct 1184; 25 L Ed 2d 435
(1970); and *Ashe v Swenson,* 397 US 436; 90 S Ct 1189;
25 L Ed 2d 469 (1970). *Benton* held that the Fifth
Amendment's guarantee that no person shall be twice
put in jeopardy for the same offense is binding on the
states through the Fourteenth Amendment. In charac-
terizing the double jeopardy prohibition as a basic right
to be applied to the states, the Court rejected the
fundamental fairness standard of *Palko v Connecticut,*
302 US 319; 58 S Ct 149; 82 L Ed 288 (1937), which was
heavily relied upon in the *Bartkus* decision. We do not,
however, read *Benton* as rejecting the result of *Bartkus.*
*Waller* unanimously held that a municipality is not a
separate sovereign but merely a creature of the state
and consequently successive state and municipal convic-
tions based on the same acts are barred by the Double
Jeopardy Clause. Since the instant case involves federal
and state prosecutions, it is distinguishable. *Ashe* in-
volved successive state prosecutions and held that the
rule of collateral estoppel is an essential part of the
Constitution's prohibition against double jeopardy. The
Court said:

" ' "Collateral estoppel" . . . means simply that when
a[n] (sic) issue of ultimate fact has once been deter-
mined by a valid and final judgment, that issue cannot

again be litigated between the same parties in any future lawsuit.' 397 US at 443; 90 S Ct at 1194.

"Since the successive federal and state prosecutions of this case do not involve the same parties or their privies, we cannot apply the rule of collateral estoppel.

"Although it appears that the dual sovereignty doctrine, which allows a single offense to be punished by two separate sovereigns, reached a high-water mark in the *Bartkus* case and has experienced some erosion through the subsequent years[1], we find that the Federal courts still recognize and affirm the continuing validity of *Bartkus*[2] See, *e.g., United States v Jackson,* 470 F2d 684, 689 (CA 5, 1972); *United States v Canty,* 153 US App D C 103; 469 F2d 114, 128 n 20 (1972); *United States v Crosson,* 462 F2d 96; 103 (CA 9, 1972); *Goldsmith v Cheney,* 447 F2d 624, 628 n 3 (CA 10, 1971); *United States v Smith,* 446 F2d 200, 202–203 (CA 4, 1971); *United States v Synnes,* 438 F2d 764, 773 (CA 8, 1971).

We conclude that until our United States Supreme Court or our Michigan Supreme Court overrules the *Bartkus* and *Illova* rule, we are required to reject defendant's claim of double jeopardy under the facts in the present case.

The conviction under count 1 is reversed and the charge dismissed. The convictions under count 2 and count 3 are affirmed.

BRONSON, P. J., concurred.

---

"[1] See, *e.g., Elkins v United States,* 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960); *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *Murphy v Waterfront Commission,* 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964).

"[2] We note further that the United States Supreme Court has recently denied certiorari in several cases questioning the application of the dual sovereignty doctrine to consecutive federal and state prosecutions. *Bechtel v New Jersey, cert den,* 404 US 831; 92 S Ct 72; 30 L Ed 2d 61 (1971); *Colonial Pipeline Co v New Jersey, cert den,* 404 US 831; 92 S Ct 72; 30 L Ed 2d 61 (1971); *Feldman v New Jersey, cert den,* 404 US 865; 92 S Ct 76; 30 L Ed 2d 109 (1971); *Jacks v New Jersey, cert den,* 404 US 865; 92 S Ct 76; 30 L Ed 2d 109 (1971); *Leuty v New Jersey, cert den,* 404 US 865; 92 S Ct 77; 30 L Ed 2d 109 (1971)."

V. J. BRENNAN, J. *(dissenting in part and concurring in part).* I concur in Judge HOLBROOK's opinion with the exception of his reversal of the attempted murder conviction. I believe that under the facts all of the elements to establish the crime of attempted murder were present; there was present the means to commit murder, also the attempt to do so.

I further found the assault requirements present.

I would affirm the attempted murder conviction.