## PEOPLE v MARKHAM

Docket No. 57205. Decided August 27, 1976. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the decision of the Court of Appeals. Rehearing denied 398 Mich 952.

Larry Markham was convicted of kidnapping by a Wayne Circuit Court jury, John M. Wise, J. The defendant was subsequently convicted of first-degree murder for the rape and killing of the kidnapping victim by a Washtenaw Circuit Court jury, William F. Ager, Jr., J., on March 19, 1970. The Court of Appeals, McGregor, P. J., and Quinn and M. F. Cavanagh, JJ., relying on the "same transaction" test, granted the defendant's motion for peremptory reversal of the murder conviction after the defendant raised the issue of double jeopardy by filing a delayed motion for a new trial which was denied by the Washtenaw circuit judge (Docket No. 22452). The people apply for leave to appeal. *Held:*

The "same transaction" test announced in *People v White,* 390 Mich 245; 212 NW2d 222 (1973), shall be applicable only when the prosecution upon which a double jeopardy claim is based began after November 20, 1973, the date it was decided.

The decision of the Court of Appeals is reversed and the conviction is reinstated.

Justice Williams concurred in the result but would limit the rule in a memorandum opinion strictly to what is necessary to resolve the case. Markham raised the issue of the "same transaction" rule almost one year after the rule was announced in *White* and he had been tried more than three years before *White.* He would not be eligible to rely upon *White* under the broadest saving clause to a nonretroactive rule.

Justice Ryan concurred in the result but would also limit the application of the rule to the facts of the case. *People v White* had a dual aspect: substantively, it proscribed multiple prosecu-

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 96.
[2–8, 10, 11] 21 Am Jur 2d, Criminal Law §§ 165, 182.
[9] 21 Am Jur 2d, Criminal Law § 495.

tions for the same or a similar criminal act under certain circumstances; procedurally, it compelled joinder of elementally distinct crimes committed as part of the same transaction. Considerations of retroactivity are different for these two classes of case. *People v White* would not apply retroactively to cases involving compulsory joinder, such as the one at bar.

Justice Levin, with Chief Justice Kavanagh concurring, dissented. He would hold that the "same transaction" test applies retroactively at least in cases pending on direct appeal when *White* was announced, November 20, 1973, and that failure to assert the defense does not waive it. The general principle is that full retroactivity is the rule, not the exception. Only a substantial reason justifies according limited retroactivity to a decision recognizing a constitutional right, and no such reason appears in this case.

390 Mich 245; 212 NW2d 222 (1973) applies prospectively only.

### Opinion of the Court

1. Criminal Law—Precedents—Retroactive Application—Prospective Application.

   A three-pronged test governs whether an announced rule of law should be applied retroactively or prospectively: (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect on the administration of justice.

2. Criminal Law—Precedents—Constitutional Law—Double Jeopardy—Prospective Application.

   Prospective application of a new rule of criminal law is possible where the ascertainment of guilt or innocence is not at stake; the guarantee against double jeopardy and an announced rule of the "same transaction" test are not required to ascertain guilt or innocence, and thus the rule may be given prospective effect.

3. Criminal Law—"Same Transaction"—Constitutional Law— Double Jeopardy—Prospective Application.

   The "same transaction" test announced by the Supreme Court, which requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal transaction, applies only where the prosecution upon which a double jeopardy claim is based began after November 20, 1973, the date on which the rule was announced by the Court.

CONCURRING OPINION

WILLIAMS, J.

4. CRIMINAL LAW—DOUBLE JEOPARDY—PRECEDENTS—RETROACTIVE APPLICATION.

*A defendant is not eligible to rely on the "same transaction" test for a double jeopardy claim where the test was announced three years after the defendant was tried and he did not raise the issue until one year after the test was announced and where the test is not retroactive.*

CONCURRING OPINION

RYAN, J.

5. CRIMINAL LAW—CONSTITUTIONAL LAW—SAME TRANSACTION—RETROACTIVITY.

*The decision of the Supreme Court announcing the same transaction test had a double aspect: in the proscription of multiple prosecutions for the same or a similar criminal act it was a substantive expansion of the Double Jeopardy Clause; in requiring joinder of elementally distinct crimes committed as part of the same transaction it was procedural; only the latter class of cases is susceptible of the three-prong analysis to determine whether it should be retroactive (People v White, 390 Mich 245; 212 NW2d 222 [1973]).*

6. CRIMINAL LAW—SAME TRANSACTION—RETROACTIVITY.

*The decision of the Supreme Court announcing the same transaction test, insofar as it requires joinder in one prosecution of elementally distinct crimes occurring in the course of a continuous transaction, should not be applied retroactively (People v White, 390 Mich 245; 212 NW2d 222 [1973]).*

DISSENTING OPINION

KAVANAGH, C. J., and LEVIN, J.

7. CRIMINAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION—RETROACTIVE APPLICATION.

*The "same transaction" test for a double jeopardy claim should apply retroactively in cases pending on direct appeal when the test was announced, November 20, 1973, and failure to assert the same transaction claim at trial or on direct appeal should not waive it.*

8. CRIMINAL LAW—DOUBLE JEOPARDY—FAILURE TO RAISE ISSUE.

   *Failure to raise in the trial court a double jeopardy claim based
   on the same transaction test does not preclude a defendant
   from raising the double jeopardy claim on appeal even where
   he pled guilty to a charge where the charge judged on its face
   was one the state could not constitutionally prosecute.*

9. CRIMINAL LAW—PLEA OF GUILTY—WAIVER OF DEFECTS.

   *A plea of guilty generally waives all nonjurisdictional defects in
   the proceedings, but the defendant may always challenge
   whether the state had a right to bring the prosecution in the
   first place by raising rights which might provide a complete
   defense to a criminal prosecution, those which undercut the
   state's interest in punishing the defendant, or the state's au-
   thority or ability to proceed with the trial.*

10. CRIMINAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION—HOMI-
    CIDE—KIDNAPPING.

    *A charge of kidnapping and a charge of murder against a defend-
    ant arose out of the same criminal transaction where both
    charges involved the same victim and the kidnapping continued
    until the killing; after the defendant was placed in jeopardy for
    kidnapping the murder victim, the state could not constitution-
    ally prosecute the defendant for murder.*

11. CRIMINAL LAW—DOUBLE JEOPARDY—PRECEDENTS—RETROACTIVE
    APPLICATION.

    *The United States Supreme Court has indicated that ordinarily
    its double jeopardy decisions will be applied retroactively; the
    practical result of application of the double jeopardy guarantee
    is to prevent a trial from taking place at all, which is signifi-
    cantly different from procedural guarantees held to have pro-
    spective effect only and to require retrials when violated.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William F. Delhey,*
Prosecuting Attorney, and *John J. Hensel,* Senior
Assistant Prosecuting Attorney, for the people.

*George Bashara, Sr.,* for defendant.

PER CURIAM. Defendant was convicted of kidnap-
ping, MCLA 750.349; MSA 28.581, by a Wayne
County Circuit Court jury on October 19, 1967.
This conviction was affirmed by the Court of Ap-

peals. 19 Mich App 616; 173 NW2d 307 (1969). The validity of that conviction is not before our Court. Subsequently, on March 19, 1970, defendant was convicted by a Washtenaw County Circuit Court jury of first degree murder, MCLA 750.316; MSA 28.548, for the rape-slaying of the kidnapping victim. It is the validity of this conviction which is at issue in this appeal.

Originally, by unpublished per curiam opinion (Docket No. 9933, rel'd December 3, 1973), the Court of Appeals affirmed the murder conviction. However, on November 1, 1974, defendant raised the issue of double jeopardy by filing a delayed motion for a new trial. This motion was denied by the circuit judge. The Court of Appeals granted defendant's motion for peremptory reversal of the murder conviction on May 28, 1975, citing only *People v White,* 390 Mich 245; 212 NW2d 222 (1973). In lieu of granting plaintiff's application for leave to appeal, pursuant to GCR 1963, 853.2(4), this Court hereby reverses the order of the Court of Appeals and reinstates defendant's murder conviction.

Defendant did not raise the *White* double jeopardy claim before or at trial. The issue of whether he thereby waived the claim is currently pending before this Court in *People v Cooper,* 58 Mich App 284; 227 NW2d 319 (1975), *leave granted,* 395 Mich 753 (1975). Assuming for purposes of this opinion only that defendant has a viable claim, the issue is whether or not the rule of *People v White,* decided November 20, 1973, is retroactive. Prosecution in both cases against Markham was commenced prior to that date. This decision on retroactivity will be governed by application of *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), and *People v Hampton,* 384 Mich 669; 187 NW2d

404 (1971). Those cases establish a three-pronged test, namely, "(1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice". 384 Mich at 674.

The first factor promotes an inquiry into whether the purposes of the rule can be effectuated by prospective application. When the ascertainment of guilt or innocence is not at stake, prospective application is possible. 384 Mich at 677. *White* and the guarantee against double jeopardy are not required to ascertain guilt or innocence.

"The second and third factors can be dealt with together because the amount of past reliance will often have a profound effect upon the administration of justice." *Id.*

When a decision overrules past settled law, more reliance is likely to have been placed in the old rule than in cases where the old law was unsettled or unknown. *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), was a restatement of "settled" Michigan law and *White* specifically overruled it. Results of prosecutorial reliance may be seen in *People v Teague,* 57 Mich App 347; 225 NW2d 761 (1975); *People v Joines (On Remand),* 55 Mich App 334; 222 NW2d 230 (1974); *People v West,* 54 Mich App 527; 221 NW2d 179 (1974); and *People v Davenport (On Remand),* 51 Mich App 484; 215 NW2d 702 (1974). We hold that the same transaction test announced in *People v White* shall be applicable only when the prosecution upon which a former jeopardy claim is based began after November 20, 1973, the date *White* was decided. Accord, *State v Fair,* 263 Or 383; 502 P2d 1150 (1972).

This order of the Court of Appeals is reversed and defendant's conviction is reinstated.

COLEMAN, FITZGERALD, and LINDEMER, JJ., concurred.

WILLIAMS, J. *(concurring)*. I concur with the result but in a memorandum opinion would limit the rule strictly to the facts and what is necessary to resolve the case.

Defendant was tried more than three years before *White* and did not raise the *White* issue until almost one year after the *White* opinion was handed down. Defendant would not be eligible to rely upon *White* under the broadest saving clause to a nonretroactive rule.

RYAN, J. *(concurring)*. I concur with the result but would limit the application of the rule herein announced to the facts of this case.

In *Robinson v Neil,* 409 US 505; 93 S Ct 876; 35 L Ed 2d 29 (1973), the United States Supreme Court decided that the question of whether a double jeopardy decision should be given limited retroactivity is "not readily susceptible of analysis under the *Linkletter [v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965)] line of cases", because these cases "dealt with those constitutional interpretations bearing on the use of evidence or on a particular mode of trial. Those procedural rights and methods of conducting trials, however, do not encompass all of the rights found in the first eight Amendments. Guarantees that do not relate to these procedural rules cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis". *Id,* at 508.

*Robinson* held that *Waller v Florida,* 397 US 387; 90 S Ct 1184; 25 L Ed 2d 435 (1970), is fully

retroactive. *Waller* held that the concept of dual sovereignty cannot be applied to two prosecutions for the same act, one under municipal law and another under state law. The analysis proceeded in terms of the "same evidence" construction of the Double Jeopardy Clause.

*People v White,* 390 Mich 245; 212 NW2d 222 (1973), held that the same transaction test is the proper construction of the term "offense" as it is used in the Double Jeopardy Clause of the state and federal constitutions. That decision was unique in that it encompassed both a substantive constitutional interpretation, and simultaneously created a new procedural mandate.

Substantively, in reading "same transaction" as the equivalent of "same offense", *White* swept within the Double Jeopardy Clause all the elementally similar or identical crimes committed "where a single criminal episode involves several victims" or "where a single transaction is divisible into chronologically discrete crimes. *E.g., Johnson v Commonwealth,* 201 Ky 314; 256 SW 388 (1923) (each of 75 poker hands a separate 'offense')". See *Ashe v Swenson,* 397 US 436, 448, 451; 90 S Ct 1189, 1197, 1198; 25 L Ed 2d 469, 478, 480 (1970) (Brennan, J. concurring).

Procedurally, *White* compelled the joinder of elementally distinct crimes committed as part of the same transaction, *e.g.,* rape, felonious assault and kidnapping, which theretofore had been prosecuted in separate informations. The Court's reason for the rule adopted was to curb prosecutorial discretion which was used to sentence shop and harass defendants.

The Court's motivation in adopting the "same transaction" test in *White* was, of course, salutary, and although, as Justice BRENNAN observed dis-

senting in *White,* the purpose could have been achieved by adopting a court rule requiring joinder of offenses under such circumstances, the Court chose to elevate this procedural mandate to constitutional stature.

This dual aspect of the *White* decision is crucial in analyzing its retroactive effect. First, cases involving the proscription of multiple prosecutions for the same or similar criminal act deal with the *substantive expansion* of the Double Jeopardy Clause, and are indeed "not readily susceptible of [retroactivity] analysis". Therefore, *White* should be fully retroactive to cases of this nature. Second, however, cases involving the joinder of elementally distinct crimes occurring in the course of a continuous transaction deal with a new, constitutionally compelled, *procedural rule.* To these cases, the majority's retroactivity analysis based on the three-pronged test of *Linkletter v Walker, supra,* and *People v Hampton,* 384 Mich 669; 187 NW2d 404 (1971), is particularly appropriate.

To cases, like the case at bar, which involve the issue of compulsory joinder, *People v White* would not apply retroactively.

LEVIN, J. *(dissenting).* In *People v White,* 390 Mich 245; 212 NW2d 222 (1973), this Court held that the Double Jeopardy Clause requires the people to join at one trial all charges against a defendant that arise out of the same criminal transaction.

The questions presented by this appeal are whether *White* applies retroactively and whether failure to raise a *White* defense before trial waives it.

We are of the view that *White* should apply

retroactively, at least in cases pending on direct appeal when *White* was announced,[1] and that failure to assert a *White* defense does not waive it.

Markham was convicted in Wayne Circuit Court in 1967 of kidnapping[2] and was sentenced to 30 to 40 years. His conviction was affirmed by the Court of Appeals[3] and this Court denied leave to appeal. The finality of that conviction is not in dispute.

After Markham sought, but before this Court denied, leave to appeal his kidnapping conviction,[4] he was convicted in Washtenaw Circuit Court of first-degree murder [5] for the death of the victim of the kidnapping.

The double jeopardy issue was not raised in the trial court or on direct appeal. The opinion of the Court of Appeals affirming Markham's murder conviction did not advert to the *White* opinion which was released November 20, 1973 about 13 days before such affirmance.[6] Markham did not seek leave to appeal his murder conviction to this Court. He filed a delayed motion for a new trial in October, 1974, asserting for the first time that the Double Jeopardy Clause barred the murder prosecution. The motion was denied. The Court of Appeals reversed the murder conviction on the authority of *White.*

---

[1] *See Hamling v United States,* 418 US 87, 102; 94 S Ct 2887; 41 L Ed 2d 590 (1974); *Jenkins v Georgia,* 418 US 153, 155; 94 S Ct 2750; 41 L Ed 2d 642 (1974).

[2] MCLA 750.349; MSA 28.581.

[3] *People v Markham,* 19 Mich App 616; 173 NW2d 307 (1969).

[4] The Court of Appeals affirmed the kidnapping conviction on October 29, 1969. Leave was applied for on November 17, 1969 and denied July 16, 1970. 383 Mich 804.

[5] MCLA 750.316; MSA 28.548.

[6] An unpublished per curiam opinion affirming Markham's murder conviction was released by the Court of Appeals on December 3, 1973. (Docket No. 9933.)

I

Markham's failure to raise his *White* defense in the trial court did not waive it.

The United States Supreme Court has held that a defendant is not precluded from raising on appeal a double jeopardy defense even though he pled guilty.[7] *Menna v New York,* 423 US 61, fn 2; 96 S Ct 241; 46 L Ed 2d 195 (1975). The Court said that Menna could assert his double jeopardy defense on appeal because—"judged on its face"—the charge to which he pled guilty was one the state could not constitutionally prosecute.[8] In *People v Alvin Johnson,* 396 Mich 424, 444; 240 NW2d 729 (1976), this Court held that a defendant may raise a double jeopardy defense on appeal from a conviction on a plea of guilty: "[T]hose rights which might provide a complete defense to a criminal prosecution, those which undercut the state's interest in punishing the defendant, or the state's authority or ability to proceed with the trial may never be waived by guilty plea."

*White* held that the Double Jeopardy Clause precludes trial of a charge after the defendant has once been placed in jeopardy for another charge

---

[7] "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the state may not constitutionally prosecute." *Menna v New York,* 423 US 61, fn 2; 96 S Ct 241; 46 L Ed 2d 195 (1975).

*Similarly, see Blackledge v Perry,* 417 US 21, 30; 94 S Ct 2098; 40 L Ed 2d 628 (1974), where the United States Supreme Court held that it was a denial of due process for a prosecutor to respond to invocation of a statutory right of appeal from a misdemeanor conviction by filing a felony charge prior to the trial *de novo,* and that a plea of guilty to the felony charge did not preclude a defendant from raising his constitutional claims in a Federal habeas corpus proceeding.

[8] Menna raised his double jeopardy claim on direct appeal in the New York Court of Appeals. The United States Supreme Court granted his motion for leave to proceed in forma pauperis, granted certiorari and reversed.

arising out of the same criminal transaction.
Markham was placed in jeopardy for kidnapping
the murder victim. The kidnapping continued un-
til the killing. Both the kidnapping charge and the
murder charge arose out of the same criminal
transaction. Under *White,* the murder charge—
"judged on its face"—was one the state could not
constitutionally prosecute.

Markham did not waive his double jeopardy
claim by failing to assert it on direct appeal. In
*Robinson v Neil,* 409 US 505, 509; 93 S Ct 876; 35
L Ed 2d 29 (1973), the United States Supreme
Court held that *Waller v Florida,* 397 US 387; 90 S
Ct 1184; 25 L Ed 2d 435 (1970), which bars on the
ground of double jeopardy two prosecutions, state
and municipal, based on the same act or events, is
retroactive, and could be availed of on collateral
attack (Federal habeas corpus) by a defendant who
pled guilty to the second charge.[9] The rationale

----

[9] Markham raised his double jeopardy claim collaterally by delayed
motion for a new trial.

The defendant in *Blackledge v Perry, supra,* likewise failed to raise
his claim on direct appeal and nevertheless prevailed because the
state court could not properly require him to answer to the charge at
all.

Distinguishing earlier decisions where the Court had held that a
plea of guilty bars independent claims relating to the deprivation of
constitutional rights that occurred before entry of the plea, the Court
said: "the right that he asserts and that we today accept is the right
not to be haled into court at all upon the felony charge. The very
initiation of the proceedings against him in the Superior Court thus
operated to deny him due process of law."

The Court explained:

"Last term in *Robinson v Neil,* 409 US 505; 93 S Ct 876; 35 L Ed 2d
29 (1973), in explaining why the Double Jeopardy Clause is distinc-
tive, the Court noted that 'its practical result is to prevent a trial
from taking place at all, rather than to prescribe the procedural rules
that govern the conduct of a trial.' *Id,* at 509. While our judgment
today is not based on the Double Jeopardy Clause, we think that the
quoted language aptly describes the due process right upon which our
judgment *is* based. The 'practical result' dictated by the Due Process
Clause in this case is that North Carolina simply could not permissi-
bly require Perry to answer to the felony charge. That being so, it
follows that his guilty plea did not foreclose him from attacking his

was essentially the same as in *Menna:* "the Court's ruling [in *Waller]* was squarely directed to the prevention of the second trial's taking place at all".

The defendants in *People v Powers,* 272 Mich 303; 261 NW 543 (1935), and *People v McDonald,* 306 Mich 65; 10 NW2d 309 (1943), were properly brought to trial a second time. The people could have been prejudiced by the failure of defendants to assert their double jeopardy defenses. Each defendant was charged with larceny and receiving stolen property. Powers was convicted of larceny, granted a new trial and convicted on retrial of receiving stolen property. On appeal, he asserted that his larceny conviction at the first trial was in effect an acquittal of the charge of receiving stolen property. At McDonald's first trial, the prosecutor withdrew the charge of larceny. A mistrial was declared when the jury was unable to agree on a verdict. At the second trial, the prosecutor withdrew the charge of receiving stolen property. McDonald was convicted of larceny. Had the double jeopardy defense been raised earlier, the people could have proceeded on retrial with the charge to which the defense did not apply and might have obtained a conviction on that charge. *Powers* and *McDonald* were not cases where the state could not constitutionally prosecute a second time.[10]

The question whether an accused person waives the benefit of a new decision by failing to raise the issue in the trial court before the new decision is announced poses, in somewhat different form, the question of the retroactivity of that decision.[11]

conviction in the Superior Court proceedings through a federal writ of habeas corpus." *Blackledge v Perry, supra,* p 31. (Emphasis by the Court.)

[10] *People v Cooper,* 58 Mich App 284; 227 NW2d 319 (1975), is pending on appeal in this Court pursuant to leave granted, 395 Mich 753 (1975).

[11] A number of judicial decisions declare that an accused person

The consequence of failure to preserve the issue is determined by the extent of the retroactivity. If a decision is fully retroactive, failure to raise the issue in the trial court or pursue it on direct appeal is of no consequence and will not preclude collateral attack on the conviction. If the retroactivity of the decision is limited to (1) cases pending on direct appeal; (2) cases pending on direct appeal where the issue was raised on appeal; or (3) such cases where the issue was preserved in the trial court, failure to preserve the issue at the trial or appellate level is of consequence.

## II

The United States Supreme Court has indicated that ordinarily its double jeopardy decisions will be applied retroactively. *Robinson v Neil, supra.*[12]

does not waive a claim to the benefit of a new decision by failing to anticipate it and assert the issue. *See, e.g., United States, ex rel O'Connor v New Jersey,* 405 F2d 632, 634, n 2 (CA 3, 1969); *United States, ex rel Smith v Brierly,* 267 F Supp 274 (ED Pa, 1967); *aff'd* 384 F2d 992 (CA 3, 1967); *Wade v Yeager,* 377 F2d 841, 845 (CA 3, 1967); *United States, ex rel Angelet v Fay,* 333 F2d 12 (CA 2, 1964); *Reeves v Warden, Maryland Penitentiary,* 346 F2d 915 (CA 4, 1965).

[12] *Robinson* declared that while the Court had not handed down a fully reasoned opinion on the retroactivity of *Benton v Maryland,* it had "indicated that it is retroactive without examination of the *Linkletter* criteria". *Robinson v Neil, supra,* p 508.

*Robinson* referred to *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), where the Court applied *Benton v Maryland, supra,* retroactively without discussion, and *Ashe v Swenson,* 397 US 436, 437, fn 1; 90 S Ct 1189; 25 L Ed 2d 469 (1970), where the Court declared:

"There can be no doubt of the 'retroactivity' of the Court's decision in *Benton v Maryland.* In *North Carolina v Pearce,* 395 US 711 [89 S Ct 2072; 23 L Ed 2d 656 (1969)] decided the same day as *Benton,* the Court unanimously accorded fully 'retroactive' effect to the *Benton* doctrine."

In *Price v Georgia,* 398 US 323, 330, fn 9; 90 S Ct 1757; 26 L Ed 2d 300 (1970), the Court declared in a footnote:

"*Benton* has fully retroactive application, see *Waller v Florida,* 397 US 387, 391, n 2 [90 S Ct 1184; 25 L Ed 2d 435] (1970)."

That statement raised some eyebrows because fn 2 of the *Waller*

The petitioner in *Robinson* was convicted in a municipal court of assault and battery in violation of a city ordinance and fined. He was later charged under state law with the crime of assault with intent to commit murder based on the same circumstances which gave rise to the municipal trial. He pled guilty and was sentenced to a term of imprisonment. Subsequently, in *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), the Supreme Court held that the Fifth Amendment guarantee that no person may be twice put in jeopardy for the same offense was binding on the states, and in *Waller v Florida, supra,* the Court held that the scope of the guarantee precluded the recognition of the dual sovereignty doctrine with respect to separate state and municipal prosecutions. *Robinson* held that *Waller* is to be accorded full retroactive effect.

*Robinson* referred to *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), where the Court first departed from the general rule of according full retroactive effect to constitutional decisions and adopted a three-part test in deciding retroactivity questions: consideration must be given to the purpose of the new rule, reliance on the old rule, and the effect on the administration of justice.

The Court in *Robinson, supra,* p 508, stated that the question whether a double jeopardy decision should be given limited retroactivity is "not readily susceptible of analysis under the *Linkletter*

opinion states that when certiorari was granted in *Price v Georgia* counsel had been requested to brief and argue the question of retroactivity of *Benton* and went on to say: "By our decisions in the instant case and in *Ashe v Swenson, supra,* we do not resolve, with respect to the circumstances presented in *Price v Georgia, supra,*" that question. The obvious circularity of the citation of fn 2 of *Waller* for the statement in fn 9 of *Price* may explain why *Price* was not referred to in *Robinson.*

line of cases". The *Linkletter* cases "dealt with those constitutional interpretations bearing on the use of evidence or on a particular mode of trial. Those procedural rights and methods of conducting trials, however, do not encompass all of the rights found in the first eight Amendments. Guarantees that do not relate to those procedural rules cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis."

The "practical result" of application of the double jeopardy guarantee "is to prevent a trial from taking place at all" and thus the guarantee "is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only". *Robinson v Neil, supra,* p 509.[13]

The Court recognized that if the state had relied on the dual sovereignty analogy, "the defendant may have been unintentionally accorded a rela-

---

[13] We note that the rationale of *Menna* and *Robinson* are essentially the same—the charge is one the state may not constitutionally prosecute.

After the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination was a valid defense to a prosecution for failure to comply with certain Federal gambling and tax statutes *[Marchetti v United States,* 390 US 39; 88 S Ct 697; 19 L Ed 2d 889 (1968); *Grosso v United States,* 390 US 62; 88 S Ct 709; 19 L Ed 2d 906 (1968)], the Court held those decisions fully retroactive to seizures of property that took place before the overruling decisions were handed down. *United States v United States Coin & Currency,* 401 US 715; 91 S Ct 1041; 28 L Ed 2d 434 (1971). Rejecting the government's contention that the retroactive effect of the new rule should be limited to protect the treasury from litigation to recover money and property seized under the statute, the Court contrasted the issue before it from its earlier retroactivity decisions concerned with the implementation of a procedural rule and its effect on the accuracy of the fact-finding process at trial:

"Rather, *Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance. These cases held that gamblers in Angelini's position had the Fifth Amendment right to remain silent in the face of the statute's command that they submit reports which could incriminate them. In the absence of a waiver of that right, such persons could not properly be prosecuted at all."

tively painless form of immunity from the state prosecution". However, since the Court had not earlier had occasion to pass on the *Waller* issue which had not assumed Federal constitutional proportions until after *Benton v Maryland, supra,* and its decision in *Waller* was not a marked departure from past decisions of the Court, "the justifiability of the state's reliance on lower court decisions supporting the dual sovereignty analogy was a good deal more dubious than the justification for reliance that has been given weight in our *Linkletter* line of cases", *Robinson v Neil, supra,* p 510.

Michigan prosecutors were clearly justified in relying on precedents which more or less uniformly applied the "same evidence" rather than the "same transaction" test in resolving double jeopardy challenges to multiple prosecutions arising out of the same criminal episode.

Application of *White* retroactively will not, however, have an adverse effect on the administration of justice by according defendants charged with serious offenses "a relatively painless form of immunity from the state prosecution".

Before *White,* when multiple felony charges were separately tried, generally the most serious charge was tried first.[14] If the defendant was convicted and a sentence satisfactory to the prosecutor imposed, the other charges were not prosecuted because of the general rule that sentences run concurrently.

Markham, for reasons that do not appear on this record (under the statute MCLA 750.349; MSA 28.581 the kidnapping charge could have been tried in Washtenaw), was first tried for kidnapping and then for first-degree murder. Upon his convic-

---

[14] *See, e.g., People v Noth,* 33 Mich App 18; 189 NW2d 779 (1971); *People v Miccichi,* 264 Mich 581; 250 NW 316 (1933).

tion for kidnapping, Markham was subject to a life sentence. The sentence actually imposed, 30 to 40 years imprisonment, is not "a relatively painless form of immunity" from prosecution.

The third *Linkletter* factor—the effect on the administration of justice of retroactive application of the new rule—focuses primarily on the impact on prosecutorial and judicial resources of requiring a large number[15] of retrials. Retroactive application of double jeopardy decisions does not, however, require retrials. The practical effect is to bar or vacate conviction in cases where the state could not properly prosecute at all.

*White* was decided over two years ago. By now all cases then pending on direct appeal have been disposed of by the Court of Appeals. Following our remand to the Court of Appeals of *Davenport* for "consideration and disposition in accord with" *White,* and of *Joines* for "reconsideration in view of" *White,*[16] the Court of Appeals has consistently applied *White* retroactively.[17]

---

[15] *See De Stefano v Woods,* 392 US 631, 634; 88 S Ct 2093; 20 L Ed 2d 1308 (1968), holding that the decision making the Sixth Amendment's guarantee of trial by jury applicable to the states *[Duncan v Louisiana,* 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968)] and the decision extending the right to jury trial for serious criminal contempts *[Bloom v Illinois,* 391 US 194; 88 S Ct 1477; 20 L Ed 2d 522 (1968)] would not be applied retroactively:

"* * * The effect of a holding of general retroactivity on law enforcement and the administration of justice would be significant, because the denial of jury trial has occurred in a *very great number of cases* in those states not until now accepting the Sixth Amendment guarantee." (Emphasis supplied.)

*Similarly, see Stovall v Denno,* 388 US 293, 300; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), holding that the rule requiring counsel at lineups *[United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)] would be applied prospectively: "the processing of current criminal calendars would be disrupted."

[16] 390 Mich 809 (1973); 392 Mich 764 (1974).

[17] *People v Joines (On Remand),* 55 Mich App 334; 222 NW2d 230 (1974); *People v Davenport (On Remand),* 51 Mich App 484; 215 NW2d 702 (1974).

All persons except Markham whose convictions were pending on direct appeal when *White* was decided appear to have obtained the benefit of the retroactive application of *White.*

We should not penalize Markham by subjecting him to service of an additional ten years (plus or minus) to infinity because neither the Court of Appeals nor his assigned counsel knew of or recognized the possibility of *White's* application to his not yet final judgment of conviction.[18]

Ordinarily, when a new decision is given limited retroactivity, the purpose is to bar relief to a large number of persons who might have raised or did raise the issue whose convictions have become final or are pending on appeal. It is anomalous to construct a rule of prospectivity to deny one defendant or a handful of defendants the benefit of a rule which appears to have been uniformly applied retroactively to all similarly situated defendants.

Retroactive application of *White* will not have a significant impact on the administration of justice. It will not require any retrials, will not result in the imposition of disproportionately light penalties and will affect relatively few offenders.

The analysis of the United States Supreme Court on retroactivity issues[19] underscores the general principle that full retroactivity is the rule—prospectivity, limited retroactivity an exception. Only a substantial reason justifies according lim-

---

[18] *See Government of the Virgin Islands v Smith,* 445 F2d 1089, 1094 (CA 3, 1971); *United States v Anderson,* 514 F2d 583, 586 (CA 7, 1975).

[19] *United States v Peltier,* 422 US 531; 95 S Ct 2313; 45 L Ed 2d 374 (1975); *Michigan v Payne,* 412 US 47; 93 S Ct 1966; 36 L Ed 2d 736 (1973); *Linkletter v Walker,* 381 US 618, 640; 85 S Ct 1731; 14 L Ed 2d 601 (1965) (Black, J., dissenting); *Desist v United States,* 394 US 244; 89 S Ct 1030; 22 L Ed 2d 248 (1969) (Douglas, J., dissenting, p 255), (Harlan, J., dissenting, p 256), (Fortas, J., dissenting, p 269).

ited retroactivity to a decision recognizing a consti-
tutional right. No such reason appears in this case.

KAVANAGH, C. J., concurred with LEVIN, J.